*261 OPINION OF THE COURT
Jasen, J.
The issue presented for our determination on these appeals is whether defendants were deprived of the effective assistance of counsel by reason of counsel’s joint representation of defendants at trial. While we had thought the applicable legal principles firmly established by prior decisions of this court, the circumstances of this case compel us to elaborate further on the safeguards which must be employed to ensure that a defendant is afforded adequate legal representation.
The pertinent facts are as follows: Defendants Maceróla and Letko were charged in a three-count indictment with the crimes of burglary in the second degree (Penal Law, § 140.25, subd 1, par [b]) and assault in the second degree (Penal Law, § 120.05, subd 1) as a result of events occurring during the evening hours of March 31, 1976, at the Governor’s Motor Inn in the Town of Guilderland. The indictment alleges, in substance, that defendants knowingly and unlawfully entered the Motor Inn with intent to commit the crime of assault, and that defendants did assault the proprietor and his wife, inflicting serious physical injury.
Defendants, represented by an attorney retained by both, were jointly tried. The jury rendered a verdict finding both defendants guilty of the crimes of burglary in the second degree and two counts of assault in the third degree.[1] On appeal, the Appellate Division, finding no evidence in the record upon which defendant Letko’s burglary conviction could be sustained, modified the judgment of conviction by reversing so much thereof as convicted Letko of burglary in the second degree and vacated the sentence imposed thereon, and, as modified, otherwise affirmed the convictions as to both defendants. Defendants were granted leave to appeal to this court from the orders of the Appellate Division.
It is the contention of the defendants that they were deprived of their constitutionally guaranteed right to the effective assistance of counsel by reason of their representa *262 tion by the same attorney at trial.[2] Due to the failure of the Trial Judge to ascertain on the record whether each defendant was cognizant of the potential risks inherent in the simultaneous representation of codefendants at trial and due to the conflict which existed between the defenses sought to be established by each defendant, we now reverse the orders of the Appellate Division and order a new trial.
It is indisputable that one accused of committing a crime is entitled to the effective assistance of counsel. Such right is guaranteed by both the Federal and State Constitutions, and by State statute (US Const, 6th Arndt; NY Const, art I, § 6; CPL 210.15, subd 2), and courts must remain ever vigilant in their duty to ensure that a defendant receives effective legal representation. As we have recognized, effectuation of this duty may be significantly impaired where one attorney "simultaneously represents the conflicting interests of a number of defendants.” (People v Gomberg, 38 NY2d 307, 312, citing Glasser v United States, 315 US 60, 70.)
While the joint representation of multiple defendants is certainly not per se violative of one’s constitutional right to the effective assistance of counsel (People v Gonzalez, 30 NY2d 28, 34, cert den 409 US 859; Holloway v Arkansas, 435 US 475, 482), we have charged the trial court, in cases where codefendants are represented by a single attorney, with the weighty responsibility of determining whether "the defendant’s decision to proceed with his attorney is an informed decision.” (People v Gomberg, 38 NY2d 307, 313, supra.) The rationale for imposing such duty is obvious. It is all too apparent that the respective interests of each defendant which must be zealously safeguarded are oftentimes at odds, making crucial decisions by defense counsel during the entire criminal proceeding all the more difficult, and, at times, precluding certain defense strategies. For example, an attorney may be less than willing to engage fervently in plea negotiations to obtain a lesser charge for one defendant if to do so would require that defendant to testify against the other defendants, or to call a defendant to testify on his own behalf when his testimony may be detrimental to other defendants whom the attorney represents. (See, generally, Geer, Representation of Multiple Criminal Defendants: Conflicts of Interest and the *263 Professional Responsibilities of the Defense Attorney, 62 Minn L Rev 119, 125-135.)
Defendants, however, often unschooled in the nature of criminal proceedings, may not always sense when a conflict of interest does exist or perceive how such conflict may run counter to the effectiveness of his attorney’s representation. Thus, before the formal commencement of trial, it is the responsibility of the Trial Judge, independent of the attorney’s obligation to inform his clients of any conflicting interests which may hinder his representation,[3] to "ascertain, on the record, whether each defendant [represented by the same attorney] has an awareness of the potential risks involved in that course and has knowingly chosen it.” (People v Gomberg, 38 NY2d, at pp 313-314, supra; see, e.g., Glasser v United States, 315 US 60, 71, supra; United States v Wisniewski, 478 F2d 274, 285; People v Coleman, 42 NY2d 500, 508-509; People v Rivera, 62 AD2d 767, 770; People v Kerr, 61 AD2d 762; People v Allini, 60 AD2d 886, 889-890; ABA Standards Relating to the Function of the Trial Judge, § 3.4.) While a defendant may choose to retain his attorney,[4] such choice may be made only after the defendant is informed of the possible ramifications which joint representation might spawn when conflicting interests arguably exist. Only after sufficient admonition by the trial court of the potential pitfalls of joint representation can it be said that a defendant’s right to the effective assistance of counsel is adequately safeguarded. If such admonition does appear on the record, appellate courts are able to determine whether a defendant’s decision to retain his attorney is indeed an informed choice.
Here, however, the record is devoid of any indication that the Trial Judge, by proper inquiry,[5] took the necessary *264 precautions to ensure that the defendants perceived the potential risks inherent in joint representation. Thus, because of this absence of a proper inquiry on the record, we are unable to ascertain whether the defendants’ decision to proceed with their attorney was knowingly and intelligently made, or whether they merely acquiesced out of ignorance to their joint representation. Although this omission by the Trial Judge was error, there remains for our consideration whether such failure to inquire mandates that defendants’ convictions be vacated and a new trial ordered.
Insofar as joint representation of codefendants is not per se violative of the constitutional guarantee to the effective assistance of counsel (see, e.g., Holloway v Arkansas, 435 US 475, 482, supra), there exists no compelling reason to adopt a rule which would automatically equate the trial court’s failure to undertake proper precautionary measures with an error of constitutional magnitude requiring reversal in every instance. There may always exist those cases in which joint representation of multiple defendants is, without doubt, justified, and the court’s neglect in admonishing codefendants of the potential risks entailed in joint representation would not deprive, without more, a defendant of his right to the effective assistance of counsel. However, where a Trial Judge has failed to make satisfactory inquiry and a defendant can demonstrate that a conflict of interest, or at least the significant possibility thereof, did exist, a new trial must be ordered for "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.” (Glasser v United States, 315 US 60, 76, supra; see People v Gomberg, 38 NY2d 307, 312, supra; United States v Lawriw, 568 F2d 98, 104-105, cert den 435 US 969, reh den 436 US 951; United States ex rel. Hart v Davenport, 478 F2d 203, 209-211.)
In this case, the record reveals that there was indeed a conflict of interest which endangered each defendant’s right to receive advice and assistance from an attorney whose paramount responsibility is to that defendant alone. Defense counsel found himself in a very awkward position at trial in that by attempting to establish a separate defense for each defendant, he was, by implication, incriminating the other defen *265 dant. Thus, to establish Macerola’s defense to the assault charges, it was necessary for counsel to attribute the responsibility for the physical injuries to Letko. Further, to establish Letko’s defense to the burglary charge, defense counsel had to stress that only Maceróla entered the private office at the Motor Inn. As admitted by defense counsel in his summation: "There’s no testimony in the total record of anyone other than Mr. Maceróla — any other defendant, Mr. Letko — at any time was in that office.”
Nor does the fact that defendants were charged with accessorial liability (Penal Law, art 20) ameliorate the inherent dangers when counsel for defendants attempted to represent their conflicting interests, as the dissent would surmise. Quite to the contrary, it becomes even more critical where one defendant is charged with the criminal conduct of another that he be represented by an attorney who, without the constant need to balance delicately competing interests, is free to demonstrate, by extensive examination of his own client or by penetrating cross-examination of other defendants, that the defendant whom he represents did not harbor the culpability required to sustain a conviction on the theory of accessorial liability. Simply put, when defendants are charged with accessorial liability, this only enhances the need to be represented by separate counsel.
Defendants having demonstrated an apparent conflict, it becomes unnecessary for us to speculate, as the dissent would now do, as to the exact prejudice resulting from the defendants’ joint representation. The right of every person accused of committing a crime to the effective assistance of counsel is too fundamental to tolerate such conjecture by appellate courts, especially where, as here, the prejudice which results when dne attorney represents codefendants with conflicting interests may never clearly manifest itself in the record. (Cf. People v Felder, 47 NY2d 287.) As observed by the Supreme Court: "Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.” (Holloway v Arkansas, 435 US 475, 489-490, supra [emphasis added].) Since the trial court failed to ascertain on the record whether each defendant had an awareness of the potential risks of joint representation and since defendants have demonstrated the existence of a conflict of interest, a new trial is required.
*266 Accordingly, the orders of the Appellate Division should be reversed and a new trial ordered.

. The trial court charged assault in the third degree as a lesser included offense of assault in the second degree with respect to the attack upon the proprietor of the Motor Inn, Donald Hauffe. The trial court only submitted the crime of assault in the third degree in reference to the assault upon the proprietor’s wife, June Hauffe.

. Separate counsel, different from counsel retained by defendants at trial, represented the defendants on their appeals to the Appellate Division and this court.

. Every attorney is under an ethical obligation to disclose fully to each client the possible implications of joint representation, and a lawyer may not act for the client unless the client has expressly consented to that course of representation. (Code of Professional Responsibility, EC 5-16, DR 5-101, subd [A]; DR 5-105, subds [B], [C]; ABA Standards Relating to the Defense Function, § 3.5, subds [a], [b].) Here, there is no evidence that the defense attorney fulfilled this obligation.

. As we recognized in People v Gomberg (38 NY2d 307, 312, supra), “an important concomitant of the right to counsel is the obligation of the courts to respect a selection of counsel made by the defendant”. By requiring a Trial Judge to apprise a defendant of the potential risks involved in joint representation, no violence befalls the right of a defendant to select an attorney of his own choosing. Rather, we are merely ensuring that such choice is intelligently and knowingly made.

. The factors and considerations which a Trial Judge should take into account when inquiring of a defendant whether he has an awareness of the potential risks *264 involved when an attorney represents two or more defendants in a criminal proceeding were set forth in detail in People v Gomberg (38 NY2d 307, 312-314, supra.)