■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT LEE RUTH, Appellant. — Judgment unanimously affirmed. Memorandum: Ruth was convicted of robbery in the first degree for his participation in the activities

that led to the beating death of Gregory Vagg. His codefendant, Richard Lee Watson, was convicted of felony murder. The primary issue on appeal is whether Ruth was denied effective assistance of counsel because of a conflict of interest that resulted from joint representation of him and Watson by the Public Defender prior to trial. The facts are simple. During the early morning hours of July 15, 1979 Gregory Vagg was abducted, brutally beaten, robbed and left unconscious in the trunk of his car in a gravel pit near Elba. He died of massive head injuries sometime later that day. The State Police were able to determine that Ruth and Watson had been engaged in a scuffle with Vagg sometime during the previous evening and they were arrested soon after Vagg's body was discovered. Each waived his *Miranda* rights and made a statement admitting participation in Vagg's abduction, but casting responsibility for Vagg's death on the other. The Public Defender was assigned to represent both defendants at the arraignment before the Clarendon Town Justice. Nine days later, after being informed of the possible consequences, both defendants testified before the Grand Jury. In all significant respects, each defendant's Grand Jury testimony is identical to his earlier oral and written statements. After indictment charging murder and robbery, but prior to arraignment in County Court, separate counsel was assigned to represent defendant. The Public Defender continued to represent Watson. Motions were made to suppress all the statements made by both defendants and to dismiss the indictment. At a joint *Huntley* hearing defendant's attorney challenged the voluntariness of his statement and argued the conflict issue. The Trial Judge found that all the statements were made voluntarily and were, therefore, admissible. He recognized the conflict problem (each claimed the other administered the fatal beating), but found that the rights of neither defendant had been prejudiced by the joint representation and that "the desire to testify was that of the defendant [Ruth] and that * * * he [Ruth] recognized the full effect of such testimony." At trial defendant testified that he had helped Watson steal Vagg's car, but that he had not participated in the later fatal beating. The jury acquitted him of murder but convicted him of the lesser count of robbery in the first degree. Unless there has been a knowing and intelligent waiver a conviction must be reversed if there is any significant possibility at all of a conflict of interest arising from the joint representation *(People v Burwell,* 53 NY2d 849; *People v Crump,* 53 NY2d 824). This rule must be strictly applied when the joint representation occurs at trial and additional proof of actual prejudice need not be shown *(People v Macerola,* 47 NY2d 257). At trial an attorney representing multiple defendants must constantly "balance delicately competing interests" and is not free to give effective assistance to one defendant at the expense of the other (p 265). Because the resulting prejudice "may never clearly manifest itself in the record" *(People v Macerola, supra,* at p 265), a quasi per se rule has developed under which joint representation will almost always require reversal of a conviction. Such grave dangers are not present in all instances, however, and we see no reason to extend the rule to those pretrial stages that do not involve adversarial conduct, such as the very short period defendant and Watson were represented by the same attorney (cf. *People v Hodge,* 53 NY2d 313). Plea bargains had not been considered and there was no opportunity for examination or cross-examination of witnesses. Since defendant can articulate no prejudice that could have been a product of the joint representation, we find the error to be harmless. As he admits, it was in his best interest to testify and throw the blame on Watson. Without his testimony the evidence that he committed the murder, alone or in concert with Watson, would have been strengthened. The Grand Jury still would have indicted him for murder and the probability of a conviction by the petit jury would have been increased. Since it was his testimony at trial that allowed

him to escape the murder conviction, the fact that he had given identical testimony to the Grand Jury rather than prejudicing him actually benefited him. Watson's testimony did prejudice Ruth, but the fact that he testified cannot be attributed to joint representation. It was also in his best interest to testify and, clearly, he would have done so even were he to have been separately represented. A brief analysis will demonstrate the lack of prejudice to defendant. He was facing an indictment for murder and his codefendant was prepared to blame everything on him. It is his claim that he was prejudiced by the fact that Watson also testified and that such occurred as a result of the joint representation. This argument is not persuasive because the fact is, as noted, it was also in Watson's best interest to testify and to blame Ruth and separate counsel would not have changed that decision. Each attorney would have been required to advise his client to "tell the truth". The Public Defender could not cross-examine witnesses or examine his clients before the Grand Jury. Thus, the joint representation engendered no prejudice to either defendant. Particularly is this true in the instant case because each defendant had already admitted participation in the events that lead to Vagg's death. Further, there is not the slightest possibility that striking Ruth's Grand Jury testimony will have any effect on the result of a new trial. That testimony, rather than being crucial, is redundant. Ruth's written admissions will still be admissible to prove Ruth guilty — not of murder — but of robbery, the very crime for which he has already been convicted. Therefore, upon these facts at this early stage we find no prejudice engendered by the joint representation before the Grand Jury. Consequently, there was no denial of defendant's right to effective assistance of counsel. And because there is no possibility of a change in result from a new trial, the conviction must be affirmed. Defendant's remaining contentions have been examined and found to be without merit. (Appeal from judgment of Orleans County Court, Miles, J. — robbery, first degree.) Present — Dillon, P.J., Cardamone, Hancock, Jr., Denman and Schnepp, JJ.