OPINION OF THE COURT
Kaye, J.
Absent inquiry by the court and consent by the defendant, an attorney may not represent a criminal defendant in a trial at which a star prosecution witness is a codefendant whose plea bargain — including the promise to testify against defendant — was negotiated by a partner in the same firm. In these circumstances defendant is denied his right to effective assistance of counsel.
The following factual recital is derived from the undisturbed findings made after a hearing held pursuant to CPL 440.10, as well as the hearing and trial records.
Defendant, Donald Mattison, was indicted on November 10, 1977, together with Dennis Maggese, on charges of robbery in the first degree. Maggese was already under indictment on unrelated burglary and drug charges, and was represented by Joseph Balok, in his capacity as an Assistant Public Defender. Balok was also a partner in the firm of Miller & Balok. Mattison was represented on the robbery charge by Raymond Urbanski, who was associated with the firm of Miller & Balok, and was recently admitted to the Bar.[1]
After Maggese’s arraignment, the court assigned James Carmody to represent Maggese in place of the Public Defender’s office on the robbery charge. Thereafter, Balok and Carmody coordinated plea negotiations on Maggese’s behalf to *466 dispose of all pending charges, with Balok as the spokesman in court appearances. On January 4, 1978, Maggese, facing up to 42 years imprisonment, pleaded guilty to some charges under each indictment as part of a plea bargain pursuant to which he agreed to testify against his codefendants in exchange for a prison sentence of zero to five years. During the plea hearing, Balok asked that the record reflect that in his presence Maggese had discussed with the Assistant District Attorney "his involvement and the involvement of [Mattison] on the robbery charge.” Maggese was then placed under oath and testified about the robbery, claiming that Mattison had obtained the gun and planned, organized and participated in the crime.
As the hearing court found, Urbanski conducted his defense of Mattison without any help from Balok. During or after Maggese’s plea negotiations Balok informed Urbanski that he represented Maggese and that Maggese had agreed to testify against Mattison. Urbanski told Mattison about Balok’s representation of Maggese at least as early as during his trial.[2] During trial before the same Chemung County Court Judge who some months earlier had taken Maggese’s plea, Mattison became upset when he saw Balok, whom he knew to be a member of Urbanski’s firm, talking in the courtroom to a police investigator. Urbanski told Mattison that Balok had represented Maggese on unrelated charges, which apparently assuaged Mattison. No objection was made to Urbanski’s continued representation, and the Trial Judge, unaware of the underlying facts, did not inform Mattison of any possible conflict of interest. Maggese, on direct, testified that he was serving a five-year sentence; in his brief cross-examination of Maggese, Urbanski made no reference whatever to the plea, or the negotiated sentence, but simply asked that the court take judicial notice of the maximum sentences for the crimes Maggese had committed. In summation Urbanski "speculated]” that Maggese’s reduced sentence possibly influenced his testimony.
*467 At trial Maggese testified that Mattison obtained the gun, planned the robbery, created an alibi, and persuaded him to go along. Mattison, in his own defense, testified that Maggese was the instigator, that he (Mattison) had previously served as a police informant, that he was watching Maggese at the request of the State Police, that he could not alert authorities before the robbery, that he had accompanied Maggese intending to turn him in, and that he lacked intent to commit a robbery.[3] Mattison was found guilty of robbery in the first degree and sentenced to 7 to 21 years in prison.
On November 14, 1978, the Appellate Division assigned Urbanski to represent Mattison on appeal. Ineffective assistance of counsel was not raised on appeal, and the conviction was affirmed.
In early 1983, Mattison made the present motion to vacate his conviction and for a new trial pursuant to CPL 440.10, in which he claimed that Balok, Miller and Urbanski, a firm of three lawyers, had a conflict of interest, and that he was denied effective assistance of counsel. Concluding that it was unable to resolve the questions raised on the papers, the court held a hearing at which several witnesses including Balok, Urbanski and Mattison testified. The court ultimately denied the motion, finding that no conflict existed, that Urbanski conducted a competent, effective and independent defense, and that by retaining Urbanski as counsel on appeal Mattison waived any ineffective assistance claim. The Appellate Division unanimously affirmed, without opinion, and a Judge of this court granted Mattison leave to appeal.
At the outset, we reject the People’s contention that Mattison waived his ineffective assistance claim because Urbanski represented him on appeal. The People rely upon People v Gomberg (38 NY2d 307, 316), in which we stated that the defendant must be deemed to have waived any claims arising out of his trial counsel’s representation because he retained the same attorney on appeal. Here, however, Urban-ski was assigned, not retained, as Mattison’s appellate counsel. Moreover, in Gomberg the court had inquired prior to trial whether the joint representation would result in a conflict and advised that any defendant who felt there was a conflict could *468 have other counsel. Thus, it was plain that defendants were aware of a potential conflict and of their right to new counsel. Here, Mattison knew that Balok, a partner at Urbanski’s firm, had represented Maggese on unrelated charges. There is no evidence that he was aware that Balok’s involvement included related charges, that joint representation in these circumstances might constitute a breach of professional ethics, or that it could furnish grounds for a new attorney or a new trial.
Joint representation of defendants is not in and of itself a conflict of interest or a denial of effective assistance of counsel (People v Gomberg, 38 NY2d 307, 312, supra). When jointly represented defendants proceed to trial together, a "conflict exists only when the individual defenses 'run afoul of each other’ ” (id., quoting People v Gonzalez, 30 NY2d 28, 34, cert denied 409 US 859). Actual conflict between defendants "may be shown, for example, through the existence of 'pronounced variations in the type and quantum of evidence against each defendant [which suggests] different theories and tactics of defense for each’ ” (People v Cruz, 63 NY2d 848, 850, quoting People v Baffi, 49 NY2d 820, 822). Once a conflict between codefendants at trial is established, prejudice is presumed, for "courts will not enter into 'nice calculations’ as to the amount of prejudice resulting from the conflict” (People v Gomberg, 38 NY2d 307, 312, supra).
In the interest of avoiding such conflicts, and because defendants may not always sense when a conflict exists or perceive how it might undermine effective representation, the Trial Judge "has a duty to protect the right of an accused to effective assistance of counsel” (People v Gomberg, 38 NY2d 307, 313, supra; People v Macerola, 47 NY2d 257, 263). Before the trial begins, "it is the responsibility of the Trial Judge, independent of the attorney’s obligation to inform his clients of any conflicting interests which may hinder his representation, to 'ascertain, on the record, whether each defendant [represented by the same attorney] has an awareness of the potential risks involved in that course and has knowingly chosen it’ ” (People v Macerola, 47 NY2d 257, 263, supra, quoting People v Gomberg, 38 NY2d 307, 313-314, supra). A Judge’s failure to make the appropriate inquiry, when circumstances require it, may result in reversal of a conviction and a new trial. In People v Macerola (47 NY2d 257, supra), for example, a new trial was necessary where the Judge had failed to make the appropriate inquiry, and each defendant’s *469 defense implicitly incriminated the other, placing their common counsel "in a very awkward position at trial” (47 NY2d, at p 264).
Macerola and Gomberg are of course distinguishable in that counsel there simultaneously represented at trial codefendants with competing interests, whereas here Maggese had struck his plea bargain during the period of common representation but before the commencement of Mattison’s trial. But the principles articulated in those cases govern this situation as well: to assure his right to effective assistance of counsel, defendant should have been independently informed of a conflicting interest on the part of Miller & Balok and the potential risks involved, so that he could intelligently choose whether to proceed with his attorney. Mattison was entitled to know of Balok’s involvement with Maggese in this matter as he proceeded to trial in which, in furtherance of the plea bargain advocated by Balok, Maggese was a principal antagonist whose credibility and testimony had to be undermined.
A similar issue was presented in People v Lombardo (61 NY2d 97), where defendant’s attorney had previously represented the People’s chief witness on unrelated charges. We concluded that the trial court’s failure to conduct a Gomberg inquiry was error, but that reversal was not required because "defendant has not demonstrated 'that a conflict of interest, or at least the significant possibility thereof, did exist’ ” (People v Lombardo, 61 NY2d 97, 103, supra, quoting People v Macerola, 47 NY2d 257, 264, supra). We conclude, as in Lombardo, that error occurred when Mattison was permitted to proceed to trial uninformed about the association of his retained counsel with Maggese. The clash between Maggese and Mattison, even if not previously apparent, was evident from the outset of the trial, as the defense was laid bare in opening statements and Maggese, the People’s first witness, took the stand. Although the Trial Judge might not — as the lower courts found — have been aware of the underlying facts, the People knew that Maggese would be a principal witness against Mattison and that he had been represented by Balok. These facts should have been brought to the attention of the Trial Judge and appropriate inquiry made (see, People v Lombardo, 61 NY2d, at p 102, supra).
 Unlike Lombardo, however, reversal is required here. First, a plea by one defendant in exchange for testimony against the other in the same matter is virtually certain to *470 place lawyers involved in representing both in an untenable position (see, People v Dell, 60 AD2d 18 [Hancock, Jr., J.]; see also, Moore, Conflicts of Interest in the Simultaneous Representation of Multiple Clients: A Proposed Solution to the Current Confusion and Controversy, 61 Tex L Rev 211, 273-274 [1982]; Tague, Multiple Representation of Targets and Witnesses During a Grand Jury Investigation, 17 Am Crim L Rev 301, 312 [1980]; Girgenti, Problems of Joint Representation of Defendants in a Criminal Case, 54 St John’s L Rev 55, 64-65 [1979]; Note, Criminal Codefendants and the Sixth Amendment: The Case for Separate Counsel, 58 Geo LJ 369, 379 [1969]). Moreover, this case presents an actual rather than potential conflict.[4] The stories of Maggese and Mattison are in direct collision — indeed, as Urbanski testified, they were inconsistent in every respect — each pointing to the other as the major culprit while exonerating himself. Finally, notwithstanding Carmody’s representation of Maggese on the robbery charge, Balok cannot be cast in the limited role of having formerly represented a prosecution witness on unrelated charges (see, e.g., People v Lombardo, 61 NY2d 97, supra). It is apparent that Balok negotiated for Maggese on related as well as unrelated charges, at the same time his associate represented Mattison. All sides viewed Maggese’s plea to the three indictments as a package. Thus, while advancing the plea bargain for Maggese, which Balok characterized as a "good plea” and "more than fair”, Balok had an obvious interest that Maggese appear less culpable, which necessarily meant that Mattison had to appear more culpable. Indeed, at the time the plea was taken Balok — lending personal force to the bargain he had negotiated — insisted the record reflect that Maggese in his presence had discussed his involvement and that of the codefendants both in the burglary and in the robbery. The success of Mattison’s defense, however, turned on convincing the jury that that very testimony was false, and concocted in Maggese’s self-interest simply to reduce his sentence. Such a situation necessarily placed trial counsel in a very awkward position, where prejudice to Mattison need not be precisely delineated but must be presumed (see, People v Gomberg, 38 NY2d 307, 312, supra).
*471 People v Alicea (61 NY2d 23), on which the People rely, is not a case where any actual conflict was shown. At his trial Alicea testified that Torres had shot the victim. Torres, represented by the same attorney, had pleaded guilty three years earlier — indeed the plea was taken even before defendant’s arrest — and absconded, and his whereabouts were unknown. We proceeded on the assumption that a potential conflict of interest existed but concluded that in these circumstances a showing of a possible or potential conflict, without more, was "insufficient to entitle defendant to a new trial; he must demonstrate that the conduct of his defense was in fact affected by the operation of the conflict” (61 NY2d, at p 31). Significantly, in Alicea the plea was not taken during the period of common representation and Torres did not testify against Alicea as a condition of his bargain.
Finally, the People emphasize that Urbanski handled Mattison’s defense without help from Balok, who acted as Assistant Public Defender, and that Urbanski as a personal matter had no divided loyalties. However, if Balok by virtue of his involvement with Maggese was precluded from representing Mattison in this matter, so was Urbanski. We have made clear that, "for the purpose of disqualification of counsel, knowledge of one member of a law firm will be imputed by inference to all members of that law firm” (see, People v Wilkins, 28 NY2d 53, 56; see also, Cardinale v Golinello, 43 NY2d 288). Given the clear conflict here, we are not called upon to decide whether a Public Defender’s office, or the law firm of a part-time Assistant Public Defender, must be disqualified from representing codefendants (see, People v Wilkins, 28 NY2d 53, 56, supra).
In view of our decision, it is unnecessary to pass on Mattison’s other arguments in support of reversal.
Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to vacate the judgment of conviction granted, and the case remitted to Chemung County Court for a new trial.
Chief Judge Wachtler and Judges Meyer, Simons, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.

. The court in its findings after the CPL 440.10 hearing did not refer to the testimony of Mattison, his mother, father and sister, to the effect that their initial discussions regarding representation, and payment of a retainer, were with Balok, and also with Miller. Balok himself testified that the firm file "reflects that [Mattison] retained the firm in November 1977”, and that while he was without specific recollection, he "might have met with [Mattison] in connection with the indictment that was pending against him or other matters”, and "took no notes whatsoever during any interviews [he] may have had with [Mattison] or members of his family either in connection with this particular indictment or any other matters.” Miller did not testify.

. The court by this finding implicitly rejected Mattison’s testimony that he first learned of Balok’s representation of Maggese in July 1980, nearly two years after his conviction, in the course of a conversation with Urbanski in which Urbanski allegedly expressed distaste for the fact that no plea bargain had ever been offered to Mattison whereas Balok had been "able to work out a very successful and comfortable deal for Maggese.” On this appeal Mattison urges that by negotiating a plea for Maggese, Balok effectively precluded any similar arrangements for him.

. Mattison was an acknowledged confidential police informant, and had in the past been paid for his services. At the CPL 440.10 hearing Mattison testified that he had in fact furnished the police with information regarding several specific crimes, including crimes involving Maggese.

. [4] We are not barred from reaching this conclusion, despite the trial court’s undisturbed finding that there was no conflict, because it is a conclusion of law, not a finding of fact (see, Cuyler v Sullivan, 446 US 335, 341).