OPINION OF THE COURT
Meyer, J.
An attorney’s concurrent representation of both a defendant charged with arson and the corporation whose building he is alleged to have damaged and whose corporate officer gives testimony tending to prove his guilt involves a conflict of interest which, absent inquiry by the court and the informed consent of the defendant, deprives the defendant of the effective assistance of counsel. The order of the Appellate Division should, therefore, be reversed and a new trial ordered.
I
Defendant, James McDonald, was indicted on charges of arson in the third degree for setting fire to a shed belonging to the Lyell Exchange Lumber Company (the company) in Rochester, New York. Throughout the pretrial and trial proceedings before the Monroe County Court, defendant was represented by retained counsel, Werner Lomker.
In an omnibus motion under CPL 210.30, Lomker sought to inspect the Grand Jury minutes; to dismiss the indictment as *5 not supported by sufficient evidence to establish the crime charged (CPL 190.65 [1]); to suppress, because tainted by a showup, the identification of defendant by the sole eyewitness, Police Officer Evelyn Baez; and other relief. In support of dismissal, counsel attached the affidavit of Michael Lazzaro, the vice-president of the company, made some six months after the fire, attesting that he had inspected the shed on the night of the fire, that there was "some damage where the boards were pulled away from the support near the foundation” but that, in his opinion, "there existed no diminution of value or damage [to the shed] as a result of any fire,”[1] and that, therefore, the company had made no insurance claim for property loss resulting from the fire. After review of the Grand Jury minutes the court denied so much of the motion as sought dismissal but ordered a Wade hearing as to the identification issue.
At the Wade hearing, the People produced evidence that defendant was seen by Officer Baez at about 2:00 a.m. from a distance of about 30 feet; that the area was lit by three street lamps; that Baez saw defendant walk briefly up and down the sidewalk adjacent to the lumberyard and then entered the yard, encircle a building and crouch alongside the corner of a shed from where flames then appeared; that defendant then ran in a northerly direction from the lumberyard; that Baez broadcast a description of him as a white male, with shoulder-length hair wearing dark pants and a white shirt; and that within 15 minutes of her broadcast, he was apprehended and returned in a marked patrol car to the scene of the fire, and there was identified by Baez as the perpetrator. Defense counsel cross-examined the two arresting officers and Baez as well, questioning her about the distance between her and defendant and about the lighting conditions, but never asked whether she knew of defendant’s arrest before she identified him at the crime scene.[2] Then, to the surprise of the prosecutor, Lomker conceded that at trial Baez could not only *6 identify defendant but also could testify to her crime-scene identification of him.
At trial the People presented the same evidence, plus the testimony of fire experts and of Dean Lazzaro, the secretary-treasurer of the company. The experts ruled out possible accidental causes of the fire and stated that the fire — which was quickly extinguished — had caused charring to the building’s clapboards at two separate locations. In their opinion, the charring, along with incidental damage caused by the efforts of fire fighters in pulling some boards away from the foundation, plus the company’s failure to repair the shed in the eight months since the fire, had diminished the value of the shed. Although Lazzaro acknowledged at the beginning of the prosecutor’s questioning that defense counsel "represents [our] company,” the Trial Judge made no effort to ascertain whether defendant was aware of that fact or whether he understood the risks involved in counsel’s representing both defendant and the company. Lazzaro’s testimony concerning the condition of the building after the fire was consistent with Michael Lazzaro’s pretrial affidavit, but he testified further that although defendant had been a lifelong family friend and a long-time employee of the company, he had quit his job about seven weeks before the fire, at a time when defendant and the company "were not on good terms because we had had some prior problems inside our establishment.” He identified those problems as including "theft and what have you” and stated that had defendant not resigned, he would have been fired.
Defense counsel began his cross-examination by acknowledging that "[i]t is very uncomfortable to call you Mr. Lazzaro”, and thereafter referred to the witness as "Dean.” His cross-examination focused on the lack of damage to the shed, but made no reference to defendant’s relationship with the company. The sole witness for the defense was an investigator, through whom defense counsel sought to impeach Officer Baez’s testimony by showing that the distance between her and defendant when she observed him apparently setting the fire was substantially greater than she had testified it was.
In summation the prosecutor argued that defendant had set the fire as "his way of getting back at the [company]” for his having had to resign "under a cloud for one reason or another.” The jury returned a verdict of guilty of arson in the third degree (Penal Law § 150.10 [1]), but on defense counsel’s *7 motion to set aside the verdict, the Trial Judge, reasoning that the People had not proven beyond a reasonable doubt the element of damage to the building, modified the verdict (see, CPL 330.30 [1]; 330.50 [1]; 470.15 [2] [a]) by substituting the lesser included offense of attempted arson in the third degree (see, Penal Law §§ 110.00, 150.10 [1]). Judgment of conviction was then entered on the verdict as modified and defendant was sentenced as a predicate felon to a minimum of two and a maximum of four years in prison.
On appeal from the judgment of conviction, defendant was represented by the Monroe County Public Defender, who argued that defendant had been denied the effective assistance of trial counsel. The Appellate Division disagreed, holding that neither a conflict of interest nor the significant possibility thereof was demonstrated "merely by showing that defendant’s trial counsel also represented the lumber company” (115 AD2d 223, 224), that the fact that the company had made no claim for repair to the shed showed that the company’s interests did not conflict with defendant’s, and that Dean Lazzaro "evidenced no hostility of any kind toward the defendant” (id.). On the People’s cross appeal from the order modifying the jury verdict, the Appellate Division held the People’s evidence of damage sufficient to sustain the jury verdict and, therefore, vacated the judgment of conviction, reversed the Trial Judge’s order, reinstated the jury verdict and remitted the matter to the Monroe County Court for resentencing.
Defendant appeals by leave of a Judge of this court. He argues that he is entitled to a new trial because counsel’s representation of both himself and the company constitutes, per se, a conflict of interest, and that he was, therefore, denied the effective assistance of counsel. He argues also that the Appellate Division erred in reinstating the jury verdict because the People had no authority under CPL 450.20 (3) to cross-appeal to that court from the order modifying the jury verdict and because the evidence was legally insufficient to present a jury question concerning whether defendant had "intentionally damage[d]” the building within the meaning of Penal Law § 150.10 (1). We conclude (1) that the Appellate Division had jurisdiction under CPL 450.20 (3) of the People’s cross appeal, (2) that the evidence of damage to the shed was legally sufficient to sustain defendant’s conviction of arson in the third degree, but (3) that under the circumstances of this case defense counsel’s concurrent representation of defendant *8 and the company constituted a conflict of interest which, in light of the Trial Judge’s failure to inquire into defendant’s knowledge of and consent to the potential risks involved, denied the defendant the effective assistance of counsel. We therefore reverse and order a new trial.
II
A defendant is denied the right to effective assistance of counsel guaranteed by the Sixth Amendment when, absent inquiry by the court and the informed consent of defendant, defense counsel represents interests which are actually in conflict with those of defendant (People v Mattison, 67 NY2d 462, 469-470; People v Lombardo, 61 NY2d 97, 102-103; People v Macerola, 47 NY2d 257, 264-265; People v Gomberg, 38 NY2d 307, 313-314; People v Wilkins, 28 NY2d 53, 55). Initially it is defense counsel’s burden to recognize the existence of a potential conflict of interest, to alert both the client and the court to the potential risks involved, and to obtain the client’s informed consent to counsel’s continued representation despite those risks (People v Lloyd, 51 NY2d 107, 111; People v Gomberg, 38 NY2d, at pp 313-314, supra; see, Code of Professional Responsibility EC 5-16, 5-19; DR 5-105 [C]; ABA Standards for Criminal Justice, Defense Function § 3.5 [a] [1971]). But the prosecutor is also obliged to alert the court when he or she possesses knowledge of facts from which apparent conflict can be inferred (People v Mattison, 67 NY2d, at p 469, supra), and the Trial Judge owes a duty independent of counsel " 'to protect the right of an accused to effective assistance of counsel’ ” (People v Mattison, 67 NY2d, at p 468, supra). And once so informed, or aware of facts from which it appears that conflicting interests arguably exist, the Trial Judge must conduct a record inquiry of each defendant whose representation is potentially conflict-ridden in order to ascertain whether he or she "has an awareness of the potential risks involved in that course and has knowingly chosen it” (People v Gomberg, 38 NY2d 307, 313-314, supra; People v Macerola, 47 NY2d 257, 263, supra). Thus, in Gomberg, we held that defense counsel’s joint representation of codefendants in a criminal prosecution created such a potential conflict of interest, and more recently, in People v Lombardo (61 NY2d 97, 102, supra) we recognize the potential for conflict in defense counsel’s representation of a defendant accused of a usurious loan scheme when he had previously represented the *9 victim of the scheme who served as the prosecution’s chief witness.
Here, although the victim’s corporate officer, Dean Lazzaro, was not the People’s chief witness — a characterization more descriptive of Officer Baez — he nonetheless provided important evidence of defendant’s motive in setting fire to the company’s shed. Thus, as the People concede, when Lazzaro disclosed the fact that defense counsel represented his company, the Trial Judge should have perceived the arguable existence of conflicting loyalties on the part of defense counsel and conducted a Gomberg inquiry.
Though the Trial Judge erred in failing to do so, that error mandates reversal only if defendant has demonstrated that " 'a conflict of interest, or at least the significant possibility thereof, did exist’ ” (People v Lombardo, 61 NY2d, at p 103, supra; People v Macerola, 47 NY2d, at p 264, supra). The conflict must, however, be one which bears a substantial relation to "the conduct of the defense” (People v Lombardo, 61 NY2d, at p 103, supra). In Lombardo, for example, although a potential for conflict existed because defense counsel owed a continuing duty to protect the confidences of his former client — the victim who testified as the prosecution’s chief witness — we held, nonetheless, that counsel, having concluded that the victim’s cooperation with the prosecution amounted to a waiver of the attorney-client privilege, had "eliminated any significant possibility that the conduct of the defense would be affected by the attorney’s prior representation of [the victim/witness], and scrutiny of the attorney’s searching cross-examination of [the victim/witness] on defendant’s trial confirms that the attorney conducted the defense on the operational premise that he no longer owed any professional obligation to [the victim/witness]” (id., at p 103; see also, Olshen v McMann, 378 F2d 993, 994, cert denied 389 US 874, reh denied 389 US 964).
We cannot, however, reach that same conclusion on the present record, for it clearly demonstrates that defense counsel Lomker labored under an actual conflict in his representation of both defendant and the company. Initially, we note that the potential for conflict is far greater here, counsel’s representation of the accused and the victim being concurrent, than in Lombardo, where counsel had terminated his representation of the victim before the trial of the accused (see, People v Wilkins, 28 NY2d, at p 56, supra; but see, United *10 States v Jeffers, 520 F2d 1256, 1263-1264, and n 13, cert denied 423 US 1066 [even though prior representation of witness has ended, the attorney may have a pecuniary interest in possible future business that may cause him to avoid vigorous cross-examination]). The only source of potential conflict in Lombardo was the attorney’s continuing obligation to protect client confidences or secrets even though the attorney-client relationship had terminated (Code of Professional Responsibility EC 4-6; DR 4-101 [B]). The victim of a crime, however, may well have an economic interest in the outcome of the criminal prosecution, creating duties on the part of his or her attorney which inherently conflict with the duties owed to the accused (see, State v Aguilar, 87 NM 503, 536 P2d 263 [victim sought payment of medical expenses from accused]; People v Coslet, 67 Ill 2d 127, 364 NE2d 67 [attorney’s representation of both accused in murder prosecution and the administrator of victim’s estate]; Code of Professional Responsibility EC 5-14 — 5-17, 5-19; DR5-105 [B]). The attorney’s economic interest in continuing representation of the victim, though not a legally cognizable duty, may also motivate a less than zealous defense of the accused even if the victim is not biased. As was stated in an often quoted passage in United States ex rel. Miller v Myers (253 F Supp 55, 57): "It takes no great understanding of human nature to realize that the individuals who had been burglarized might be less than happy and might go so far as to remove the attorney from their good graces if this defendant were acquitted or received a light sentence or were placed on probation. Moreover, if the case had gone to trial it might have meant an investigation involving the [victims] and even cross-examination of them on the stand. The entire situation could be very embarrassing for the lawyer who is naturally interested in having the legal business of the [victims], especially when they are much more able to compensate him for his services than the defendant. The circumstances here are such that an attorney cannot properly serve two masters.”[3]
But perhaps the most pervasive source of conflict remains the victim (see, Castillo v Estelle, 504 F2d 1243, 1245; Unites States ex rel. Miller v Myers, 253 F Supp, at p 57, supra; People v Stoval, 40 Ill 2d 109, 112-113, 239 NE2d 441, 443; see *11 also, Tucker v United States, 235 F2d 238, 240). The Fifth Circuit put the matter succinctly when it stated that "[t]he victim of a crime is not a detached observer of the trial of the accused, and his ’private attorney’ is likely to be restrained in the handling of that client/witness” (Castillo v Estelle, 504 F2d, at p 1245, supra).4 And more recently, speaking in the related context of an accomplice’s testimony against the defendant, we held in Mattison (67 NY2d, at p 470, supra) that the attorney’s decision whether and how best to impeach the credibility of a witness to whom he — or his law partner — owed a duty of loyalty "necessarily placed [the attorney] in a very awkward position, where prejudice to [defendant] need not be precisely delineated but must be presumed (see, People v Gomberg, 38 NY2d 307, 312, supra). ”
The People argue, nonetheless, that under the particular circumstances of this case, defendant has demonstrated neither an actual conflict nor the significant possibility of conflict. They point to the fact that the company disclaimed any economic interest in the outcome of the trial, providing both a pretrial affidavit in support of defendant’s motion to dismiss the indictment and trial testimony asserting that the shed had not been damaged and that no insurance claims had been filed. Thus, they suggest, Dean Lazzaro having testified favorably to defendant on the damage issue, counsel had no interest in attempting to impeach his credibility.
Although we decline to adopt the per se approach urged upon us by defendant,[4]
[5] we also disagree with the People’s *12 contention that under the circumstances of this case there was no conflict and on the present record find Mattison controlling. Despite the People’s efforts to portray a spirit of cooperation between defense counsel and the company, we cannot ignore the fact that Dean Lazzaro’s testimony concerning defendant’s employment relationship with the company was an integral part of the People’s case against him. Indeed, the prosecutor foreshadowed this evidence of motive in his opening statement and made full use of it in summation. Under these circumstances, defendant was entitled to be informed by the Trial Judge that his attorney’s representation of the company placed counsel in a "very awkward position” in deciding whether and how best to impeach Lazzaro’s trial testimony. That an attorney whose loyalty is undivided might have chosen not to impeach Lazzaro concerning defendant’s employment history because his testimony was otherwise favorable to defendant, or indeed that no basis for impeachment existed, is of no import. It was the prerogative of defendant rather than his counsel to decide whether he would accept the risk that counsel’s trial strategy was devised not in his interest, but in the interest of the company. Nor is this a case, such as Lemley v State (245 Ga 350, 264 SE2d 881), relied on by the People, where it was held that no conflict existed because both the witness and the accused gave the same testimony (compare also, United States v Fannon, 491 F2d 129, cert denied 419 US 1012 [no conflict where accused confirmed the testimony of accomplice/witness]; Circumstances Giving Rise to Conflict of Interest Between or Among Criminal Codefendants Precluding Representation by Same Counsel, Ann., 34 ALR3d 470, § 6 [d], at 486-490 [collecting similar cases]). We add that here, unlike Lombardo, defense counsel made no claim that his client’s cooperation with the People constituted a waiver of the attorney-client privilege. Legal ethics aside, he could not practically have done so without imperiling his status as the attorney for the company, from whose good graces he may have fallen because of his failure to protect his client’s confidences and secrets (Code of Professional Responsibility EC 4-1, 4-5; DR 4-101 [B]). Nor does it appear that counsel obtained the consent necessary to use a client’s confidences and secrets in a manner detrimental to his or her *13 interest (Code of Professional Responsibility DR 4-101 [C] [2]). The court’s failure to conduct a Gomberg inquiry was, therefore, reversible error.[6]
Ill
There remain for consideration defendant’s challenge to the legal sufficiency of the evidence to sustain the jury’s verdict and to the jurisdiction of the Appellate Division to hear and determine the People’s cross appeal from the order of the Trial Judge modifying the jury verdict.[7]
The Appellate Division did not err in holding the evidence sufficient to present a jury question with respect to damage within the meaning of Penal Law § 150.10 (l).[8] Slight burning or charring was sufficient under prior statute (Levy v People, 80 NY 327 ["burn somewhat the realty” (at p 332); "It matters not that it did not burn but a part of the edifice” (at p 334)]; People v Butler, 16 Johns 203 ["two or three of the kitchen stairs were, in part, consumed”]; 3 Wharton, Criminal Law § 346 [14th ed]; What Constitutes "Burning” to Justify Charge of Arson, Ann., 28 ALR4th 482). This was recognized when the present Penal Law was adopted, the Staff Notes of the Temporary State Commission on Revision of the Penal Law and the Criminal Code (Proposed New York Penal Law 1964) with respect to arson stating that the "burning” requirement of the prior statute "does not mean destruction or even *14 substantial damage, for the slightest damage is sufficient” (id., at 349). Although the prior law was substantially changed to remove incongruities with respect to the intent required for the various degrees of arson (id., at 350), nothing in the legislative history or in the change from "burning a building” to "damages a building” suggests an intent to vary the quantum of proof required. Rather the change makes clear that proof of damage short of burning (including proof of "charring”) is sufficient to establish this element of the crime (see, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 150.10, p 89).
We also reject defendant’s challenge to the jurisdiction of the Appellate Division.[9] CPL 450.20 (3) grants the People the right to appeal to an intermediate appellate court from a criminal court "order setting aside a verdict, entered pursuant to section 330.30 or 370.10”. The reference to CPL 330.30 is to that section as a whole and encompasses the court’s authority either to "set aside or modify the verdict or any part thereof’. The Legislature cannot, therefore, be deemed to have intended to exclude from the People’s right of appeal those orders entered pursuant to CPL 330.30 that modify rather than completely set aside the jury verdict (People v Wright, 92 AD2d 722, further appeal at 112 AD2d 38, revd on other grounds 67 NY2d 749; People v Holmes. 72 AD2d 1; see, People v Dorta, 56 AD2d 607, appeal dismissed 44 NY2d 930). Indeed, so to construe the section would be inconsistent with the Legislature’s intent by its enactment to provide defendants with "an omnibus 'motion to set aside verdict’ ” (Temporary State Commission on Revision of Penal Law and Criminal Code, Proposed CPL 170.30, Staff Comment, at 238 [1967]; Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 330.30, p 46).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.

. The theory of counsel’s accompanying memorandum of law was that because Penal Law § 150.10 (1) required proof that defendant "intentionally damage[d]” the shed, he could not be convicted of arson in the third degree unless there had been a diminution in the value of the shed.

. Earlier, in response to questioning by the court, Officer Nicholas Bianchi stated that he informed the police dispatcher, by radio, that he had apprehended defendant and was transporting him back to the lumberyard and that Baez, who carried a portable radio, could have heard the broadcast before she identified defendant.

. Cf. Wood v Georgia (450 US 261 [defendant’s legal fees paid by his employer]); Judd, Conflicts of Interest — A Trial Judge’s Notes, 44 Fordham L Rev 1097, 1099-1102; Code of Professional Responsibility EC 5-1, 5-21, 5-22; DR 5-101 (A); 5-107 (A).

. As is evident from our citation in People v Wilkins (28 NY2d 53, 56) of the Myers and Stoval rulings, we have long recognized the dangers inherent in an attorney’s cross-examination of his or her client. That no conflict was found in Wilkins, although the Legal Aid Society represented both the defendant and the complaining witness, resulted from the unique organization of the Society’s legal staff.

. Defendant would have us rule that there is always a conflict when the same attorney represents both the accused and the victim. Our rejection of such a per se rule does not mean that defendant must specifically demonstrate prejudice, however, in order to obtain a reversal. It will be sufficient, absent the required inquiry and consent, that a substantial possibility of prejudice existed. We underscore the distinction between conflict and prejudice, however, because there is confusion in this regard in some of the cases on which defendant relies to support a per se rule. Thus, in People v Coslet (67 111 2d 127, 133, 364 NE2d 67, 70), the Illinois Supreme Court described People v Stoval (40 111 2d 109, 239 NE2d 441), relied on by defendant as making unnecessary allegation or proof of prejudice when an actual conflict is shown, and made a like ruling in People v Berland (74 111 2d 286, 385 NE2d 649). Similarly, Zurita v United States (410 F2d 477) merely ordered a *12 hearing on petitioner’s coram nobis application. On remand, however, the District Court found that no conflict existed and in an unreported opinion (No. 71-1070, 7th Cir, Jan. 20, 1972, cited in United States v Jeffers, 520 F2d 1256,1260, n 3) the Seventh Circuit affirmed.

. In light of that conclusion, we need not consider the effect of the company’s disclaimer of any economic interest in the outcome of the criminal prosecution, nor the inference to be drawn from defense counsel’s unanticipated concession, made at the close of the Wade hearing, that Officer Baez’s right to identify defendant at trial would be unrestricted (see, Holloway v Arkansas, 435 US 475, 489-490; and Geer, Representation of Multiple Criminal Defendants: Conflicts of Interests and the Professional Responsibilities of the Defense Attorney, 62 Minn L Rev 119, 128, 136 [discussing defenses "lost” by reason of divided loyalties]).

. We must, of course, reach these issues, for if defendant is correct in asserting that the evidence was legally insufficient to convict him of arson in the third degree, either because the Trial Judge’s determination to. that effect is not appealable by the People or because, though appealable, the Appellate Division’s contrary determination is erroneous, the remedy would be not a new trial but an order dismissing the indictment with leave for the People to institute such proceedings as they deem appropriate respecting the lesser included attempt offense not charged in the indictment (see, People v Mayo, 48 NY2d 245, 253).

. The statute provides that "[a] person is guilty of arson in the third degree when he intentionally damages a building or motor vehicle by starting a fire or causing an explosion.”

. Because appealability goes to the subject matter jurisdiction of the court (see, e.g., People v Marra, 13 NY2d 18, 20, and cases there cited), which may be raised for the first time on appeal to this court (People v Ahmed, 66 NY2d 307, 310; People v Harper, 37 NY2d 96, 99), the fact that the defendant failed to move before the Appellate Division to dismiss the People’s appeal presents no obstacle to our consideration of the question.