Titone, J.
(dissenting). Unlike the rule derived from the Sixth Amendment of the United States Constitution, New York’s rule concerning joint representation of codefendants is operative not only when there has been a demonstrable actual. conflict of interest, but also where a significant possibility of such conflict existed (People v Monroe, 54 NY2d 35, 38, n 2, cert denied 455 US 947). By holding that a "significant possibility” is "more than a potential conflict” and that a jointly represented defendant can obtain a reversal only if the conflict "operated” as well as "exist[ed]” (majority mem, at 879), the majority has taken a giant step toward aligning our State’s rule with the more exacting Federal standard. Further, because the majority has moved our law closer to the Federal actual-conflict standard, which requires a specific factual showing, reversals will become almost impossible to obtain in the future without first conducting a postconviction hearing— an approach that has heretofore been characterized as "not the preferred procedure” for vindicating conflict-of-interest *881 claims (id., at 39). These developments represent an unfortunate step backward from the court’s prior solicitude for criminal defendants’ right to conflict-free representation. Accordingly, I dissent.
Initially, there is no dispute that, despite having been alerted to the existence of a dual representation problem, the trial court in this case did not conduct the necessary on-the-record inquiry to ensure that defendant understood the risks of joint representation (see, People v Gomberg, 38 NY2d 307).[1] Further, it is now beyond question that the principles outlined in the Gomberg-Macerola line of cases (People v Macerola, 47 NY2d 257; People v Gomberg, supra) are applicable even in prosecutions terminating in guilty pleas (People v Monroe, supra). Thus, the only remaining question in this appeal is whether there was a "significant possibility” of a conflict of interest so that reversal is required (People v Macerola, supra).
This court has not yet attempted a comprehensive analysis of what constitutes a "significant possibility” of a conflict. However, it is plain from this court’s prior writings on the subject that the standard was meant to be applied in a manner that avoids second-guessing the actual defense strategies and looks instead to the available strategies and potential pitfalls of joint representation in a particular case (see, People v Macerola, supra, at 265). With this principle in mind, this court has found a "significant possibility” of a conflict where, although no specific clashing defenses were identified, there were "pronounced variations in the type and quantum of evidence against each defendant^ which] suggested different theories and tactics of defense for each” (People v Baffi, 49 NY2d 820, 822). Similarly, "differences in the level of culpability of the two codefendants” and the possibility that one may have been coerced by the other were "alone sufficient to support the inference that the interests of the codefendants * * * were not completely harmonious * * * giv[ing] rise to a significant potential for conflict of interest” (People v Burwell, 53 NY2d 849, 851). Finally, in People v Crump (53 NY2d 824, 825), the court found a "significant possibility” of conflict "discernible from the record” solely because the codefendants *882 "were both alleged to have had possession of certain proceeds of a crime” and "[h]ad they been represented by separate counsel, each might have attempted to show that [these proceeds] were in the sole possession of the other.”
In none of these cases was the defendant asked to show that the identified area of conflict actually operated, as the majority now suggests. Indeed, even apart from its sheer linguistic inconsistency, the majority’s present assertion that a "significant possibility” of a conflict "is more than a potential conflict” (majority mem, at 879) is directly contrary to our holding in People v Burwell (supra, at 851 [emphasis supplied]) that reversal was required because there was "a significant potential for conflict of interest.” Even more to the point, it is difficult to find a ground for distinguishing between the Federal standard, which requires a showing of actual conflict (see, Cuyler v Sullivan, 446 US 335), and the majority’s new standard, which requires a conflict that "operated.” Thus, the majority has, in effect, overruled the statement in People v Monroe (supra, at 38, n 2) that "[t]he rule under the Federal Constitution differs” from our State rule.
Because the Federal standard is less protective of the right to conflict-free representation than is our State’s former rule, I would adhere to the latter and apply it to this case, leading to the inevitable conclusion that there must be a reversal.[2] This case is closely analogous to People v Crump (supra, at 825), in which the court found a "significant possibility” of conflict where jointly represented codefendants were both alleged to have possessed the same goods and an attorney with undivided loyalty might have attempted to shift the blame to the codefendant. Here, defendant and his wife were jointly charged with possessing the drugs that were found in their marital apartment. As in Crump, an attorney unhampered by divided loyalties might well have attempted to shift culpability from defendant to his codefendant wife. That a different attorney might have forgone such a strategy for other reasons, such as its inherent factual weakness or a desire by defendant to protect his wife, is of no moment, since "[i]t was the prerogative of defendant * * * to decide whether he would accept the risk that counsel’s * * * strategy was devised” in *883 part to serve his other client’s interest (People v McDonald, 68 NY2d 1, 12, supra).
The indicia of a "significant possibility” of conflict are even more compelling in this guilty plea case, which required a subtle balancing of competing considerations and potential trade-offs (see, Geer, Representation of Multiple Criminal Defendants: Conflict of Interest and the Professional Responsibilities of the Defense Attorney, 62 Minn L Rev 119, 125). Moreover, the possibilities for conflict are multiplied where, as here, there are differences in the codefendants’ relative culpability. In such cases, the attorney may not be able conscientiously to represent the less culpable defendant in plea negotiations without at least attempting to shift the blame by stressing the other’s more reprehensible conduct (see, Lowenthal, Joint Representation in Criminal Cases: A Critical Appraisal, 64 Va L Rev 939, 942-943).
Indeed, the existence of a conflict, or at least a "significant possibility” thereof, becomes undeniable where, as occurred in this case, a "package deal” is struck and a disposition totally exonerating one defendant is conditioned on the other’s acceptance of a concomitantly harsh sentence.[3] In such circumstances, the inference that the attorney succumbed to the temptation to secure a favorable deal for the less culpable client at the expense of the more culpable one is difficult to avoid (see, Geer, op. cit., at 126). Further, where, as here, the jointly represented codefendants are close family members, the need for conflict-free representation is most acute, since the client’s own judgment is likely to be clouded by emotion.[4]
*884 In short, because the attorney’s representation of both codefendants in this case was rife with the possibility of conflict, a reversal should ensue without further inquiry (People v Macerola, supra). However, rather than stopping at the obviously significant risk of conflict arising from the disparities in the codefendants’ culpability and punishment, the majority has gone one step further and held that reversal is not required because "the disparate outcomes * * * are explained by the disparate culpability of the codefendants” and "[n]othing in the record suggests that [defendant] decided to plead guilty to protect his wife * * * or that the plea was induced by any consideration other than [defendant’s] own best interests” (majority mem, at 879). However, the absence from the record of proof that defendant’s plea was induced by either his concern for his wife or something else, other than his own best interests, is hardly surprising, since any indication on the record to the contrary would have mandated either a further inquiry or an outright rejection of the plea by the trial court. Additionally, without the sound advice of conflict-free counsel, defendant had no way of intelligently assessing whether the plea bargain was, in fact, in his best interest. Thus, the majority’s reliance on this factor begs the question.
Similarly, defendant’s apparently greater culpability may explain why his disposition was harsher than his codefendant wife’s, but it does not follow that defendant could not have received a more favorable "deal” if he had been represented by an attorney whose loyalties were undivided. Moreover, the purported "fact” that defendant’s wife had no involvement at all in his possession and sale of drugs is itself suspect, since defendant’s attorney was prevented by his conflict-riddled position from adopting an adversarial stance toward the wife and possibly developing a record that would have cast her role in a more sinister light (see, Holloway v Arkansas, 435 US 475, 489-490).
Finally, because the majority has shifted the standard for reversal from our State’s traditional "significant possibility” of conflict test, which utilizes an a priori analysis, to the fact-based — and more difficult to satisfy — actual conflict standard used at the Federal level, a new burden has been placed on defendants to establish a record in order to demonstrate that the potential conflict they have identified actually "operated.” As a consequence, although the majority disavows any intention to relegate jointly represented defendants to postconvic *885 tion hearings, it is hard to imagine how an aggrieved defendant will otherwise be able to make the required showing.
I oppose such a transformation from what was reluctantly tolerated by the majority in People v Monroe (supra, at 39) as "not the preferred procedure”. In this regard, the point made by the three dissenters in Monroe is still persuasive: "The difficulty with the retrospective hearing to determine whether there was in fact a conflict is that it requires not only the recapture of the dynamics of the plea bargaining (or * * * of the trial), in itself a difficult enough pursuit, but also the persuasion of the Judge who failed to see the possibility of conflict in the first place and the attorney whose acumen, if not integrity, may be at stake, that they were in error and should admit it. True, in any particular case * * * the fact may * * * be that there was no conflict, but the odds against a finding of conflict resulting from such a hearing are so great and the effect upon the appearance of justice of a procedure which appears to pit lawyer and Judge against client is so devastating that we can no longer agree to the use of the procedure.” (54 NY2d, supra, at 40 [Jones, Fuchsberg and Meyer, JJ., dissenting].)
The price for these postconviction hearings focusing on a defense counsel’s integrity and ethical judgment is high, entailing a loss of public confidence in a system that invites the attorney to defend himself at his client’s expense. At the same time, because of the obvious incentive the attorney has to cast his own behavior in the best light, there is a serious possibility that these hearings will lead to unreliable results and that relief will be denied to many whose defenses truly were impaired by their attorneys’ divided loyalties. Indeed, it is no accident that only one of the four GombergMacerola appeals involving a supplementary record with post hoc rationalizations on the conflict question resulted in the conviction’s reversal (compare, People v Lombardo, 61 NY2d 97; People v Alicea, 61 NY2d 23; and People v Monroe, supra, with People v Mattison, 67 NY2d 462, cert denied 479 US 984), while, in contrast, reversals have been granted in almost every case in which the "significant possibility” of conflict was ascertained without resort to such supplementary records (see, e.g., People v McDonald, supra; People v Crump, supra; People v Burwell, supra; People v Baffi, supra; People v Fioretti, 49 NY2d 976; People v Macerola, supra).
In this case, if the majority were not looking for an actual or "operative” conflict, as distinguished from a significant *886 possibility thereof, there would be no need for defendant to show the actual connection between his reasons for pleading guilty and his attorney’s apparent significant conflict — a showing that, in most cases, can only be made through a postconviction hearing. The outcome in this case — an affirmance despite the trial court’s failure to ensure a knowing and intelligent waiver and the presence of a serious possibility of conflict — foreshadows what we can expect in the future under the majority’s new standard. Because I am concerned about the erosion of our commitment to the Gomberg-Macerola doctrine that this decision signals, I respectfully dissent.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Bellacosa concur; Judge Titone dissents and votes to reverse in an opinion in which Judge Hancock, Jr., concurs.
Order affirmed in a memorandum.

. During one early calendar call in the case, the trial court raised the subject of defense counsel’s representation of both defendants and the prosecutor offered his opinion that there was "definitely a conflict of interest.” Although it was agreed that there would be a further exploration of the conflict problem at the parties’ next court appearance, the subject was never again mentioned.

. Contrary to the majority’s assertion (majority mem, at 880), the rule outlined in the above-described cases is no more a per se rule of reversal now than it was when it was first described in People v Macerola (47 NY2d 257).

. It is clear from the record that the People’s consent to the dismissal of the charges against defendant’s wife was expressly conditioned on defendant’s plea of guilty to the top counts in all three indictments against him. Significantly, the trial court characterized defendant’s half of this package deal as "hard” and the sentence "rather lengthy” in view of defendant’s background. In contrast, defendant’s wife was left without even a criminal conviction on her record, although she shared with defendant the apartment in which a quantity of drugs had been found and was therefore equally vulnerable to a charge of criminal narcotics possession.

. For this reason, contrary to the majority’s suggestion, People v Burwell (53 NY2d 849) is persuasive authority here, and it is irrelevant that the appealing defendant in that case was apparently the less culpable of the jointly represented codefendants while, in this case, the appealing defendant is apparently the more culpable of the two. Regardless of their relative culpability, codefendants represented by the same attorney are equally at risk, because each may obtain a less than optimal disposition of his or her case as a result of the attorney’s inability to compromise the other’s interests.