OPINION OF THE COURT
Jones, J.
Defendant was not denied his constitutional right to effective assistance of counsel because his attorney had previously also represented a codefendant (giving rise to a potential conflict of interest) where, following a posttrial hearing, the trial court determined that such prior representation had not affected the attorney’s representation of defendant.
On September 8,1976, while defendant was walking his two German shepherd dogs, an argument arose with Michael Lugo, the superintendent of a neighboring building about the conduct of one of the dogs. Four days later, defendant, accompanied by his son-in-law, Luis Torres, again encountered Lugo, and an altercation ensued. The dispute climaxed when Lugo was shot several times and suffered serious injuries.
Torres was arrested on the day of the incident and confessed that he had shot Lugo after Lugo had punched defendant. Torres was represented by Melvin L. Greenwald, Esq., on charges of attempted murder, assault in the first degree, and criminal possession of a weapon. On February 28, 1977, Torres pleaded guilty to the assault *26 count in full satisfaction of all charges. He failed to appear for sentencing, however, and absconded.
Defendant was arrested on March 26,1977, was charged with the same offenses as Torres had been, and was likewise represented by Greenwald.
At defendant’s jury trial, which began on February 4, 1980, the People introduced testimony that defendant and Torres had been looking for Lugo the night before the shooting to afford Lugo an opportunity to give defendant the “slaps” that Lugo had offered to give him during the original argument. The owner of a social club, who was a friend of Lugo, testified that defendant had been drinking with Torres at the club on the day of the shooting, that defendant was upset and that he had told Torres that he had a dispute with Lugo about the dogs and wanted to kill Lugo. The owner further testified that defendant had shown Torres a gun and had shot it at a friend of the owner outside the club.
According to Lugo’s testimony, defendant and Torres approached him outside his apartment building and defendant challenged Lugo to slap him in the face as he claimed Lugo had promised to do during their original argument. Lugo denied having threatened to slap defendant, but defendant continued to insult him. Lugo was about to leave when he saw “flashings” coming from defendant’s and Torres’ pockets and heard the sound of gunshots. He fell to the ground, and Torres fired a shot at him as he lay there. Defendant and Torres then fled.
According to testimony of the doctor who operated on Lugo, he had been shot at least four, and possibly five, times. A gun was introduced without objection which had been found on a neighboring rooftop to which Torres had directed the police following his arrest, and a ballistics expert testified that one of the bullets removed from Lugo’s body had been fired from that gun.
Based on information received from Torres, police officers conducted a search of the area surrounding the scene of the shooting but were unable to find the second suspected assailant. A detective testified with respect to his efforts to locate defendant and as to his eventual arrest some six months after the incident.
*27 Defendant took the stand on his own behalf, presenting the only evidence for the defense. According to his testimony; on the day of the shooting he was walking with Torres when Lugo, who was standing in front of his building across the street, repeated a threat he had made on September 8. Defendant and Torres each challenged Lugo to hit him. Lugo then crossed the street accompanied by three other persons and grabbed defendant by the neck. At that moment, Torres fired at Lugo and then told defendant that they should leave because there were three people hiding behind a bus.
The jury was informed that Torres had been indicted for the shooting, had pleaded guilty and had not appeared for sentencing. The case was then submitted to the jury on both principal and accessorial theories of liability. The jury returned verdicts of not guilty of attempted murder but guilty of first degree assault.
Defendant appealed the judgment of conviction to the Appellate Division. In the interim, he moved to vacate the judgment on the ground that he had been denied effective assistance of counsel due to a conflict of interest caused by Greenwald’s prior representation of Torres. The Judge who had presided over the trial held a hearing on the motion.
According to Greenwald’s hearing testimony, he had no longer considered himself Torres’ attorney after Torres absconded following his plea. Greenwald testified that he last saw Torres at his plea, and that, although they had frequently discussed Torres’ whereabouts, defendant did not know where Torres could be located. Greenwald further testified that Torres had never told him defendant had shot Lugo and that the essence of Torres’ statements to him was contained in the prosecutor’s voluntary disclosure form which included the entry: “Defendant [Torres] said that he had shot a guy who had punched his father-in-law in the face. He said that two days earlier his father-in-law was walking a dog, and this guy who was a superintendent argued with the father-in-law about the dog messing the sidewalk in front of the superintendent’s building. On the day of the shooting there was another argument and the guy punched the father-in-law and defendant shot the superintendent.” Greenwald denied that his failure to have *28 offered Torres’ admission in the disclosure form was the result of any effort to protect Torres and claimed that his prior representation of Torres in no way guided any decision he made regarding defendant’s trial. He also testified that he had never discussed the possibility of a conflict of interest with defendant.
Defendant testified at the hearing that he had retained Greenwald soon after Torres’ arrest to represent both Torres and himself. Defendant had discussed the possibility of his own arrest with Greenwald, and at one point Greenwald had informed him that a detective was looking for him and had instructed him not to contact the detective. After being arrested, defendant had called Greenwald who then came to his arraignment. At various times defendant had met with Torres and Greenwald to discuss the case, with both defendant and Torres maintaining that Torres had shot Lugo. Defendant agreed that Greenwald had never advised him about the possibility of a conflict of interest.
At the conclusion of the hearing the trial court denied defendant’s motion in an oral ruling. Noting that defendant’s principal contention was that Greenwald had failed to call Torres as a witness at the trial, the court stated that this was not significant because Greenwald had not seen him for three years and evidently defendant himself could not get his son-in-law to come into court. As to defendant’s argument that Greenwald should have sought to introduce Torres’ admission, the court pointed out that Torres’ statement that he shot Lugo was not a declaration that defendant did not also shoot Lugo. Moreover, the court noted that whether the statement would have been admissible as a declaration against penal interest was a difficult question. The court concluded that it was “virtually inconceivable * * * that Mr. Greenwald’s actions, or omissions, with respect to this matter, were governed, or, in any way, influenced by the fact that he had represented Torres,” and that, “[wjhatever criticism may or may not be appropriate concerning his conduct of the Alicea trial, any possible, inadvisable tactics on his part, most certainly, have nothing to do with the desire by him to assist Torres, or with any alleged ‘conflict of interest’
*29 The Appellate Division affirmed the judgment of conviction and the order denying defendant’s motion to vacate judgment, without opinion. Defendant has appealed to our court. There should be an affirmance.
On this appeal, defendant argues that Greenwald had a continuing obligation to protect Torres’ interests although Torres had previously pleaded guilty and that this continuing duty posed a conflict of interest or at least the significant possibility of a conflict which violated defendant’s right to effective assistance of counsel. The People contend that inasmuch as Torres had already pleaded guilty and failed to appear at sentencing and defendant was not tried jointly with Torres, Torres had implicitly dismissed Greenwald as his attorney when he absconded and there was thus no joint representation of multiple defendants by Greenwald at the time of defendant’s trial.
It is to be observed at the threshold that this is not a case of multiple representation of codefendants at the same trial, calling for invocation of the procedures and determination of defendant’s rights in accordance with the principles applicable in such cases (e.g., People v Macerola, 47 NY2d 257; People v Gomberg, 38 NY2d 307). We recognize, however, that conflicts of interests arising from multiple representation can occur although the defendants are not tried together. An attorney’s obligations to his client do not terminate once the representation of the client by the attorney has been completed. An attorney is obligated, for example, not to disclose confidences and secrets of the client even after the representation has ceased (Code of Professional Responsibility, DR 4-101). Further, there may be aspects of the prior representation which are still ongoing following the formal termination of the representation which the attorney would be obligated not to undermine. Consequently, a conflict of interest from an attorney’s successive representation of multiple defendants may be the predicate for the finding of ineffective assistance of counsel where the defendants are not tried together (see Cuyler v Sullivan, 446 US 335).
In the present case, although defendant was not tried until some three years after Torres had pleaded guilty and absconded, we assume that Greenwald still had a continu *30 ing duty to maintain any confidences or secrets he had gained in representing Torres and not to take any action which would be adverse to Torres’ interests. Torres had not been sentenced and no appeal had been taken at the time of defendant’s trial so that the case against him was still ongoing, and it was possible that what transpired in defendant’s trial could have an adverse impact on Torres. Thus, we proceed on the assumption, as apparently did the trial court, that Greenwald still had a professional obligation to Torres at the time defendant stood trial which gave rise to a potential conflict of interest.
The critical issue in cases such as this is whether the defendant was denied his constitutional right to effective assistance of counsel in consequence of the operation of the potential conflict. If, as occurred in this instance, the trial court concludes after a posttrial hearing that the conflict of interest did not in fact affect the manner in which the attorney conducted the defendant’s defense and that determination is not disturbed at the Appellate Division, the defendant is not entitled to a new trial merely because he can show that, a priori, there was a significant possibility that a conflict of interest did exist.*
Defendant urges that Torres’ testimony would have been beneficial to the defense and that Greenwald was therefore obligated in his representation of defendant to have undertaken to obtain his presence and testimony at the trial. He stresses that had Greenwald been successful in locating Torres, however, Greenwald would then have faced ethical difficulties in seeking Torres’ appearance in the face of an outstanding bench warrant against him. Defendant also points to Greenwald’s failure at least to have offered in evidence the record of Torres’ admission that he had shot Lugo. Although the People urge that the introduction of *31 that admission, known as it was to the prosecution, could have worked no detriment to Torres, an attorney sensitive to the latter’s best interests might have concluded that it would better serve those interests to let sleeping dogs lie. Thus, defendant submits that he has shown that there was a substantial possibility of a conflict of interest.
As stated, however, such a showing, without more, is insufficient to entitle defendant to a new trial; he must demonstrate that the conduct of his defense was in fact affected by the operation of the conflict of interest. Here, the Trial Judge made an equivocal factual determination that defendant’s representation by Greenwald was not influenced or affected by his prior representation of Torres. This is a finding, not that defendant might not have been prejudiced in consequence of a conflict of interest, but that the potential conflict of interest simply never operated, that in legal contemplation there was no conflict of interest. This finding, having been made by the Trial Judge and affirmed at the Appellate Division, is beyond our review. There was, therefore, no error in the conclusion that in the circumstances of this case defendant was not denied his constitutional right to effective assistance of counsel.
We have considered defendant’s other assertions of error and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.

 We observe in passing that, in cases presenting claims of denial of effective assistance of counsel resulting from multiple representation, failure of the defendant to establish that he was actually prejudiced in consequence of his counsel’s conduct of his defense will not defeat his entitlement to a reversal (People v Macerola, 47 NY2d 257, 265; Cuyler v Sullivan, 446 US 335, 349-350). Thus, in this case, absence of proof that defendant was in fact prejudiced by Greenwald’s failure to call Torres or to offer his voluntary admission would not defeat his right to a reversal if he were otherwise entitled thereto. A determination that the potential conflict of interest did not affect the conduct of the defense and thus never operated is wholly different from a conclusion that, although it operated, the defendant was not prejudiced thereby.