OPINION OF THE COURT
Robert W. Coutant, J.
Upon defendant’s conviction of criminal possession of stolen *796 property in the first degree, the District Attorney filed an information alleging a prior felony conviction in January 1976. Defendant concedes the existence of that conviction, but alleges that he was deprived of the effective assistance of counsel during those proceedings in violation of his rights under US Constitution 6th Amendment and NY Constitution, article I, § 6.
Defendant and his son were jointly indicted for the crime of criminal possession of stolen property in the first degree in October 1975 and were jointly represented by retained counsel at all proceedings. Pursuant to plea negotiations, defendant pleaded guilty to the crime charged and was sentenced to a conditional discharge for three years. His son pleaded guilty to criminal possession of stolen property in the third degree, a misdemeanor, and was sentenced to a conditional discharge for one year. A review of the record relating to the arraignment, plea and sentencing of each reveals that there was no inquiry by the trial court or comment by the attorney or either accused regarding representation by the same attorney.
The manner of conducting the hearing required to resolve such issues appears to be clearly spelled out in CPL 400.21 (7). However, the People raise some "nice questions” concerning its implementation.
In brief, they argue that paragraph (b) of subdivision (7) is self-limiting to violations of the Constitution of the United States, and, since a State may not superimpose its interpretation of the Federal Constitution over those made by the Federal courts, Federal decisional law is controlling. They continue that such decisions clearly hold that (1) there is no constitutional requirement that a trial court inquire of a defendant concerning joint representation unless it has reason to believe that a conflict may actually exist or the defendant raises some objection to joint representation, and (2) a defendant raising this objection after conviction has the burden of proving that an actual conflict of interest existed and that it adversely affected his attorney’s performance.
The defendant responds in the alternative. On the one hand, he maintains that although paragraph (b) initially refers to the Federal Constitution, it later allows a defendant to controvert the conviction "on the grounds that the conviction was unconstitutionally obtained”, including any violation of the New York State Constitution as interpreted by State courts. In the alternative, he argues that if Federal law is *797 controlling, decisions in the Second Circuit require inquiry by the trial court, and absent such inquiry, the burden of proof shifts to the prosecution to demonstrate that the defendant was not prejudiced.
Under the prosecution’s interpretation of the statute, a defendant’s relief from second felony offender status must be based on a violation of his 6th Amendment rights as defined by the United States Supreme Court in Cuyler v Sullivan (446 US 335 [1980]). There, the court expressly rejected the views of the Third Circuit to the contrary and held that the 6th Amendment imposed upon the trial court no affirmative duty to inquire unless it knows or reasonably should know that a particular conflict exists, that a defendant seeking to attack a prior conviction must demonstrate that an actual conflict of interest adversely affected the adequacy of his representation and that the mere possibility of a conflict of interest is insufficient.
Interestingly, the court acknowledged by footnote its awareness that several Federal Courts of Appeals had used their supervisory powers to require judicial inquiry in all cases of joint representation, that the then proposed (and since enacted) Federal Rules of Criminal Procedure, rule 44 (c) imposed a similar requirement, and that they viewed "such an exercise * * * as a desirable practice” (Cuyler v Sullivan, supra, p 346, n 10). The Court of Appeals for the Second Circuit had so held in United States v Carrigan (543 F2d 1053, 1055 [1976]):
"The law in this Circuit is clear. When a potential conflict of interest arises * * * the proper course of action for the trial judge is to conduct a hearing to determine whether a conflict exists to the degree that a defendant may be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the Sixth Amendment. The defendant should be fully advised by the trial court of the facts underlying the potential conflict and be given the opportunity to express his views * * *
"The mere representation of two or more defendants by a single attorney does not automatically give rise to a constitutional deprivation of counsel. It is settled in this Circuit that some specific instance of prejudice, some real conflict of interest, resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel.”
*798 Most New York decisional law on this specific issue is in the context of direct appeal or postjudgment motions under CPL 440.10 (1) (h), which permits a court to vacate a conviction if it "was obtained in violation of a right of the defendant under the constitution of this state or of the United States.” (Emphasis added.) No decision is found where the same issue is raised in the procedure for determining whether a defendant is a second felony offender as set forth in CPL 400.21. Subdivision (7) (b) of that section reads as follows: "A previous conviction in this or any other jurisdiction which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to a predicate felony conviction. The defendant may, at any time during the course of the hearing hereunder controvert an allegation with respect to such conviction in the statement on the grounds that the conviction was unconstitutionally obtained. Failure to challenge the previous conviction in the manner provided herein constitutes a waiver on the part of the defendant of any allegation of unconstitutionality unless good cause be shown for such failure to make timely challenge.” (Emphasis added.)
The requirements of the New York courts have evolved from a similar base and developed along parallel lines. In considering a case in which the defendant had made no protest and the trial court had made no inquiry, the Court of Appeals acknowledged "the rule that has developed that 'an appellant must show some conflict of interest between himself and the other defendants represented by his attorney before he can claim successfully that the joint representation deprived him of his right to counsel.’ ” (People v Gonzalez, 30 NY2d 28, 32 [1972], quoting from United States v Bentvena, 319 F2d 916, 937 [2d Cir].)
In People v Gomberg (38 NY2d 307 [1975]), the Court of Appeals first recognized the need for some inquiry by the trial court and held that while the joint representation of multiple defendants was not a per se denial of the effective assistance of counsel, trial courts were required to ascertain on the record whether each defendant was aware of the potential risks involved in such representation and had given his informed consent to so proceed.
Not unexpectedly, the court next considered the effect of a trial court’s failure to inquire in People v Macerola (47 NY2d 257 [1979]). After reaffirming the principles set forth in Gom *799 berg (supra), it held (p 264) that "there exists no compelling reason to adopt a rule which would automatically equate the trial court’s failure to undertake proper precautionary measures with an error of constitutional magnitude requiring reversal in every instance”.
The court further indicated that a defendant claiming the ineffective assistance of counsel under such circumstances has the burden of proof in establishing a conflict of interest: "[W]here a Trial Judge has failed to make satisfactory inquiry and a defendant can demonstrate that a conflict of interest, or at least the significant possibility thereof, did exist, a new trial must be ordered” (People v Macerola, supra, p 264; see also, People v Baffi, 49 NY2d 820 [1980]).
Thus, the Maceróla court recognized that a defendant might be hard pressed to show actual prejudice in the trial record and determined that a demonstrated "significant possibility” of a conflict of interest would serve as an adequate basis for relief. At first blush, this would appear a distinct departure from Federal requirements, but the Second Circuit recognized the same peril and chose the remedy of shifting the burden of proof to the government to show that the defendant had not been prejudiced by the failure to inquire. (United States v Corrigan, supra, at p 1056; United States v DeBerry, 487 F2d 448 [2d Cir 1973]; see also, United States v Foster, 469 F2d 1, 5 [1st Cir, 1972].)
The notion of shifting burdens of proof also appealed to at least one New York court which took the matter one step further by placing the initial burden on the defendant to demonstrate a conflict of interest and then shifting it to the prosecution to show that it didn’t really make any difference. In People v Baldi (76 AD2d 259, 292 [2d Dept 1980]), the court noted that "in the face of a defendant’s demonstration that counsel’s performance probably prejudiced his case * * * the burden shifts to the prosecution to prove beyond a reasonable doubt that the error was harmless.” On review, the Court of Appeals (54 NY2d 137) did not comment on this view, although it would appear to be at odds with their traditional view that a significant possibility of a conflict of interest will suffice to overturn a conviction, and "once a conflict is clearly established, the courts will not enter into 'nice calculations’ as to the amount of prejudice resulting from the conflict” (People v Gomberg, supra, at p 312, citing Glasser v United States, 315 US 60, 76).
*800 In People v Monroe (54 NY2d 35, 39 [1981]), the court extended the same rules to convictions resulting from pleas of guilty:
"where the court has accepted a guilty plea without first assuring that the defendant understands the risks of joint representation, a reversal of defendant’s conviction on appeal will result only when there is a 'significant possibility’ that a conflict of interest existed (People v Macerola * * * supra) * * *
"Where, as here, defendant has had an opportunity to establish, on the record, the basis for his claim of a conflict of interest and has failed to do so, it cannot be said that it was error as a matter of law * * * to have affirmed the decision * * * concluding that no significant possibility of a conflict of interest existed.”
Subsequent cases have been consistent. (See, People v Cruz, 63 NY2d 848 [1984]; People v Lombardo, 61 NY2d 97 [1984]; People v Grimes, 94 AD2d 957 [4th Dept 1983]; People v Medina, 106 AD2d 756 [3d Dept 1984].)
Finally, we consider the somewhat cryptic language of People v Alicea (61 NY2d 23 [1983]), which dealt with a postverdict motion under CPL 440.10. The particular facts of the case may or may not be significant. One Torres was represented on certain criminal charges by Attorney Greenwald and ultimately pleaded guilty to one of them in satisfaction of all. He absconded prior to sentencing and remained at large when Alicea was arrested on the same charges and was also represented by Greenwald. The trial court made no inquiry regarding any potential conflict of interest. Defendant was convicted after a jury trial and moved to vacate the conviction on the subject grounds. After a hearing, the Trial Judge denied the motion and the Appellate Division affirmed, without opinion.
While embracing Macerola (which stated, "where a Trial Judge has failed to make satisfactory inquiry and a defendant can demonstrate that a conflict of interest, or at least the significant possibility thereof, did exist, a new trial must be ordered” [People v Macerola, supra, p 264]), the Alicea court holds that where it is concluded after a hearing that the "conflict of interest did not in fact affect the manner in which the attorney conducted the defendant’s defense * * * the defendant is not entitled to a new trial merely because he can show, a priori, there was a significant possibility that a *801 conflict of interest did exist” (People v Alicea, supra, p 30; emphasis added). There followed the following footnote for "clarification”: "We observe in passing that, in cases presenting claims of denial of effective assistance of counsel resulting from multiple representation, failure of the defendant to establish that he was actually prejudiced in consequence of his counsel’s conduct of his defense will not defeat his entitlement to a reversal (People v Macerola, 47 NY2d 257, 265; Cuyler v Sullivan, 446 US 335, 349-350). Thus, in this case, absence of proof that defendant was in fact prejudiced by Greenwald’s failure to call Torres or to offer his voluntary admission would not defeat his right to a reversal if he were otherwise entitled thereto. A determination that the potential conflict of interest did not affect the conduct of the defense and thus never operated is wholly different from a conclusion that, although it operated, the defendant was not prejudiced thereby.” (People v Alicea, supra, p 30, n.)
Any attempt to interpret those words as consistent with Macerola (supra) is a truly humbling and futile task, evoking a reaction similar to that of former Chief Judge Cooke in his concurring opinion: "Although the majority does not make clear what constitutes an 'affected’ defense or how this may be proven, as a practical matter, it appears that the majority would require a defendant to show that his defense was actually prejudiced due to his attorney’s representation of a codefendant. In any event, it is difficult to conceive a difference between a prejudicial defense and an affected defense. No rationale is proffered to justify a differing approach.” (People v Alicea, supra, p 32.)
Since the court did not consider this "distinction” a departure from Maceróla (supra) and made its observation only after a careful dissection of the trial record, the guidelines of Maceróla must be considered intact and Alicea confined to the particular facts of the case, especially with regard to convictions resulting from pleas of guilty.
It appears clear that while Federal and State courts recognize the same hazards of joint representation, their solutions differ with respect to what must be proved and who must prove it. The question of who has the burden of proof under CPL 400.21 has already been decided. In People v Harris (61 NY2d 9, 15 [1983]), the Court of Appeals set out the procedure to be followed: "This section places upon the People the burden of proving beyond a reasonable doubt the existence of the previous felony conviction (CPL 400.21, subd 7, par [a]), *802 but not its constitutionality. Once the fact of the prior conviction has been established, it is then incumbent upon the defendant to allege and prove the facts underlying the claim that the conviction was unconstitutionally obtained (CPL 400.21, subd 7, par [b])”.
Therefore, it is but a short step to infer that the State constitutional and procedural requirements control proceedings under this section, and the People’s position that such constitutional impediments are limited to the Federal Constitution cannot be upheld.
Firstly, as Judge Jasen pointed out in Harris (supra, p 16), "this court has on numerous occasions repeated that 'an alleged second or third felony offender could question the validity of the predicate conviction at the time he was resentenced.’ (People v Wilkins, 28 NY2d 213, 218; see, also, People v Jones, 17 NY2d 404; People v Machado, 17 NY2d 440.)”
Secondly, as we observed in People v Alicea (supra), the Court of Appeals applied the Maceróla and Monroe criteria to a postverdict motion under CPL 440.10. The prosecution’s position would allow such postverdict issues to be decided under the Constitution of this State if brought under CPL 440.10 but not if raised under CPL 400.21, a result which would be both illogical and unjust.*
Thirdly, their interpretation of CPL 400.21 would require that the statutory limitation be upheld even though the conviction was obtained in this State in violation of NY Constitution, article I, § 6, a proposition that has always met immediate rejection.
If a hearing be required to resolve the issues here presented, the defendant has the burden of proof in demonstrating that he was denied the effective assistance of counsel. If he successfully shows that the predicate felony conviction was obtained in violation of his rights under either the Constitution of this State or of the United States, he is entitled to relief.

 One may ponder the motive of the Legislature in choosing such selective language here while using specifically broader language under other sections. One speculation might be that the opening portion of CPL 400.21 (7) (b) refers to a conviction "in this or any other jurisdiction”, and since they believed that the New York Constitution would have no bearing on the procedures followed in another jurisdiction, they referred only to the Federal Constitution.