■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAVIER CARILLO, Appellant. [630 NYS2d 305] —Order, Supreme Court, Bronx County (Robert L. Cohen, J.), entered on or about August 3, 1994, which denied defendant's motion to vacate the judgment of conviction pursuant to CPL 440.10, is unanimously reversed, on the law and the facts, and the judgment of conviction, rendered February 22, 1994, which convicted defendant, after a jury trial, of Murder in the Second Degree, and sentenced him to 20 years to life, is vacated and the matter is remanded for a new trial. Appeal from the same judgment is dismissed as moot.

The trial court erred in denying defendant's CPL article 440 motion in light of allegations that defense counsel (Raymond Durand, Esq.) had multiple conflicts of interest due to his representation of various individuals associated with the case, and that newly discovered eyewitnesses could exonerate defendant and inculpate another of Durand's clients. Specifically, defendant's present attorney asserts that the eyewitnesses, who defense counsel failed to call at trial, would have stated that Arnold Garcia Rodriquez, who was known as "Chino" on the street, was the shooter, not defendant, and that Durand represented defendant, Chino, and another eyewitness (Hector Negron) simultaneously, without disclosing the conflict of interest to the court.

The right to effective assistance of counsel encompasses the right to conflict-free counsel so that counsel's devotion to his client's interests will be " ' "single-minded" ' " (People v Ortiz, 76 NY2d 652, 656, quoting People v Darby, 75 NY2d 449, 454). An attorney who simultaneously represents two clients whose interests actually conflict cannot provide effective assistance to either client and the possibility of divided loyalty also exists when the conflicting representations are not simultaneous (People v Ortiz, supra, at 656): "Even though a representation has ended, a lawyer has continuing professional obligations to a former client, including the duty to maintain that client's confidences and secrets (People v Alicea, 61 NY2d 23, 29), which

may potentially create a conflict between the former client and a present client."

The potential conflict must bear a substantial relation to the conduct of the defense (*People v Recupero*, 73 NY2d 877, 879; *People v Lombardo*, 61 NY2d 97, 103), although the defendant need not show specific prejudice (*see, People v Ortiz, supra*; *People v Alicea, supra*). Once the Judge becomes aware of facts from which it appears that conflicting interests possibly exist, the Judge must conduct a record inquiry of the defendant to ascertain whether he is aware of the potential risks involved and whether the defendant wishes to continue on the same course (*People v McDonald*, 68 NY2d 1).

In the matter before us, it cannot be ascertained, with certainty, when the court became apprised that an actual or potential conflict of interest existed. Even if the court had been aware of a potential conflict, however, the failure to conduct a *Gomberg* inquiry (*People v Gomberg*, 38 NY2d 307) mandates reversal only if defendant demonstrates that " ' "a conflict of interest, or at least the significant possibility thereof, did exist" ' ", and that the conflict bore a substantial relation to the conduct of defense (*People v McDonald, supra*, at 9, quoting *People v Lombardo, supra*, at 103).

With regard to Negron, while it is true that Negron's testimony might have exculpated defendant, the fact that he did not testify, despite Durand's indication to the jury during his opening statement that he would testify, demonstrates that a conflict may have existed. It is possible that he did not testify due to a pending drug case in which he was represented by Durand, and was concerned that if he was subjected to cross-examination in this case, his testimony with respect to his drug activities and his status as an employee in defendant's drug enterprise might have been used against him in the pending case. Further, a conflict may have been created by the fact that Durand had represented Negron on more than one occasion, giving him a pecuniary interest, in that he may have been motivated to guard Negron's interests to ensure that he would be retained in the future (*see, People v McDonald, supra*, at 10; *United States v Jeffers*, 520 F2d 1256, *cert denied* 423 US 1066).

In any event, once Negron "bolted" as his time to testify at trial drew near, a conflict-free attorney would have hired an investigator or would have sought a material witness order to ensure an exculpatory witness' presence at trial. Durand might also have contacted the District Attorney's office to request a favorable plea negotiation with respect to Negron's outstand-

ing case in return for Negron's truthful testimony identifying Chino as the killer. Durand, however, took absolutely no action despite the potential value of Negron's testimony.

With regard to Chino, who was allegedly the triggerman, while Durand's representation of him had ended a short time previously, questions of divided loyalty still exist as Durand had a continuing duty to maintain Chino's confidences. In addition, despite the fact that every eyewitness identified Chino as the killer, and Durand had heard on the street that Chino was the real culprit, he did absolutely nothing to verify the information or to locate Chino. It is, therefore, clear to us that Durand's prior representation of Chino, as well as Negron, affected his representation of defendant and the conduct of the defense (*People v Ortiz, supra*; *People v Alicea, supra*). Concur—Murphy, P. J., Rosenberger, Rubin, Tom and Mazzarelli, JJ.