Robert EISEMANN, Petitioner–Appellee,

v.

Victor HERBERT, Superintendent, Collins Correctional Facility, Respondent–Appellant.

Docket No. 03–2582.

United States Court of Appeals, Second Circuit.

Argued: Oct. 22, 2004.

Decided: March 11, 2005.

---

Karen W. Weiss, Asst. District Atty., Mineola, N.Y. (Denis Dillon, Nassau County District Atty., Peter A. Weinstein, Edward Miller, Asst. District Attys., Mineola, N.Y., on the brief), for Respondent–Appellant.

William D. Wexler, North Babylon, N.Y., for Petitioner–Appellee.

Before: NEWMAN, SACK, and B.D. PARKER, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal concerns a claim of ineffective assistance of counsel based on an alleged conflict of interest. The claim, arising out of a bizarre factual context, was the basis for the August 5, 2003, judgment of the District Court for the Eastern District of New York (Jack B. Weinstein, District Judge), granting a petition for a writ of habeas corpus brought by Petitioner–Appellee Robert Eisemann to challenge his New York State sodomy conviction. *See Eisemann v. Herbert,* 274 F.Supp.2d 283 (E.D.N.Y.2003). Although the ineffective assistance claim is of arguable concern, we conclude that it is ultimately without merit and that the New York courts did not make "an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court," the threshold for habeas corpus relief established by the Antiterrorism and Effective

Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1). We therefore reverse.

### Background

Demonstrating that truth is often far stranger than fiction, this case involves a father and a son who sodomized the same victim, a trial lawyer who represented both the father and the son, and the disbarment for fraud convictions of both the trial lawyer and the son's state court appellate lawyer.

Robert Eisemann ("Robert") was charged with sodomizing a seven-year-old girl on five occasions between 1983 and 1985. Robert was in a long-term relationship with the girl's mother. He was arrested on August 8, 1985, and interrogated by two police detectives after being read his *Miranda* rights. He then signed a statement admitting to sodomy on at least one occasion and to having committed sodomy-type acts with the victim in his sleep.

On the same day that Robert was arrested, police also arrested his father, Henry Eisemann ("Henry"), for sodomizing the same victim and her brother. Henry also made an incriminating statement. Both father and son were indicted on December 9, 1985. Henry was accused of twenty-three counts of sodomy and/or sexual abuse, one count involving the same victim as in Robert's case and the rest involving her twin brother. Robert was indicted on five sodomy counts, all involving the same victim.

Henry and Robert engaged Harold Holtman to represent them, although Holtman was paid by Henry and his wife. Holtman turned out to be a poor choice as he was later convicted of fraud and disbarred. *See In re Harold Holtman,* 152 A.D.2d 15, 547 N.Y.S.2d 335 (2d Dep't 1989).

In December 1985, Henry pled guilty to attempted sodomy and received a sentence of three-to-nine years.

Robert was represented by both Holtman and his associate, Victor Regan. At the pretrial hearing in August 1986 on the admissibility of Robert's inculpatory statement, Regan conducted the defense. Robert was tried in October 1986. Regan appears to have conducted almost all of the defense, although Holtman attended much, if not all, of the proceedings.

During the trial, the child victim testified against Robert, doing so with her face turned away from him. The police detectives and the victim's mother also testified.

█ The jury found Robert guilty on three of the five sodomy counts. By the time the verdict was rendered, Robert had disappeared. The District Court found that Holtman had instructed Robert to flee. Robert was sentenced *in absentia* to a minimum of eight and one-third years and a maximum of twenty-five years.[1]

In February 1990, the Appellate Division affirmed Robert's conviction, rejecting his challenges to the sufficiency of the evidence and the admission of his inculpatory statement, but making no mention of a claim of ineffective assistance of trial counsel. *People v. Eis[e]mann,* 158 A.D.2d 537, 537–38, 551 N.Y.S.2d 304, 304–05 (2d Dep't 1990). However, the Appellate Division subsequently granted a writ of *coram nobis,* vacating its own decision on the ground of ineffective assistance of Robert's appellate counsel, Marvin E. Basson. *See People v. Eisemann,* 242 A.D.2d

---

1. The District Court and Robert's counsel indicated that Robert has either been released on parole or is soon to be released. Even if he has been released on parole, he would be "in custody" for purposes of 28 U.S.C. § 2254. *See Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

581, 582, 664 N.Y.S.2d 732, 733 (2d Dep't 1997). Basson later resigned from the bar following his conviction for fraud. _See In re Marvin E. Basson,_ 214 A.D.2d 106, 631 N.Y.S.2d 535 (2d Dep't 1995).

On a subsequent appeal after new counsel was appointed, the Appellate Division vacated Robert's conviction on one of the sodomy counts, but affirmed the remaining counts. _People v. Eisemann,_ 248 A.D.2d 484, 670 N.Y.S.2d 39 (2d Dep't 1998). The Appellate Division found Robert's claim of ineffective assistance of trial counsel to be without merit. _Id._ at 484, 670 N.Y.S.2d at 41. Leave to appeal was denied by the Court of Appeals. _People v. Eisemann,_ 92 N.Y.2d 851, 677 N.Y.S.2d 82, 699 N.E.2d 442 (1998) (table).

Robert sought relief through habeas corpus on three grounds: first, that Holtman's representation of Henry in general deprived Robert of effective assistance of counsel and that Holtman's many violations of professional responsibility rules, especially his representation of Robert's father, created a conflict that specifically prevented Holtman from providing effective assistance; second, that Robert's counsel provided ineffective assistance by failing to properly object to the confession and alleged trial errors; and third, that Robert was deprived of his rights under the Confrontation Clause because the child victim testified facing away from him at trial.

The District Court determined that the Confrontation Clause claim was not properly preserved for review and that the lack of proper preservation did not result from ineffective assistance of counsel. _See Eisemann,_ 274 F.Supp.2d at 306–07. The District Court also ruled that the claims of ineffective assistance unrelated to Holtman's conflict of interest provided no basis for relief. _See id._ at 306. The District Court denied a certificate of appealability

with regard to these two claims, _see id._ at 308, and Robert has not challenged either of these rulings in this Court.

With respect to the claim of ineffective assistance due to a conflict of interest arising from Holtman's representation of Robert's father, the District Court ruled that state remedies regarding this claim were properly exhausted. _See_ id. at 298. On the merits, the District Court determined that Holtman's representation of Robert and his father created a conflict of interest and that this conflict "adversely affected [Holtman's] performance," _Cuyler v. Sullivan,_ 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), by causing Holtman to forgo three defense strategies that were "viable and reasonable," _Eisemann,_ 274 F.Supp.2d at 302. These were (1) calling Henry as a witness, (2) contending that Henry's confession was coerced, and (3) encouraging Robert to accept a plea in exchange for testifying against Henry. _See id._ at 302–04. Judge Weinstein also concluded that Holtman had a conflict of interest arising from his fraudulent conduct with respect to the Eisemann family, that a claim of ineffective assistance because of this conflict "should be deemed exhausted," _id._ at 306, and that "Holtman's interest in concealing his massive wrongdoing eclipsed his interest in zealously safeguarding his client's rights," _id._ at 305.

Judge Weinstein granted relief solely because of the adverse affect of Holtman's representation of both father and son, and required Robert to be released unless the state retried him within 60 days or took other appropriate action. _See id._ at 307. The judgment was stayed pending this appeal.

## Discussion

The State raises four principal arguments on appeal: first, that the New York courts did not reach a determination that

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); second, that Robert's representation was not adversely affected by Holtman's representation of Robert's father; third, that the alternative defense strategies suggested by Judge Weinstein were not reasonable or even plausible; and fourth, that Holtman's financial misdeeds did not result in a conflict that adversely affected Robert's representation.

## I. Conflicts of Interest and Ineffective Assistance of Counsel

▮ "A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Blau*, 159 F.3d 68, 74 (2d Cir.1998). In the absence of a conflict of interest, a defendant claiming ineffective assistance of counsel must demonstrate that the lawyer's representation "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that counsel's deficiency was "prejudicial" to the defense, *id.* at 692, 104 S.Ct. 2052. However, "[p]rejudice is presumed ... if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' *Cuyler* [446 U.S.] at 350, 348, 100 S.Ct. 1708 (footnote omitted)." *Id.* These components are considered in a single, integrated inquiry. "[T]he *[Cuyler v.] Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Tay-*

*lor,* 535 U.S. 162, 172 n. 5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002).

▮ The circuits are divided as to how a defendant may demonstrate that a conflict adversely affected his counsel's performance. As we discuss below, *see* Part III, the differing views have relevance to application of the standard for habeas corpus relief required by AEDPA. Our Court has stated that a defendant need suggest only a "plausible" alternative strategy that was not pursued at trial, not necessarily a "reasonable" one. *See United States v. Feyrer,* 333 F.3d 110, 118 (2d Cir.2003). "To prove the lapse in representation 'a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.' " *Id.* at 116 (quoting *United States v. Schwarz,* 283 F.3d 76, 92 (2d Cir.2002)). "We have held previously that a defendant represented by conflicted counsel need not demonstrate that the alternative strategy or tactic foregone by counsel was reasonable. Rather, the defendant need only prove that the alternative strategy was plausible." *Id.* 118 (citing *United States v. Malpiedi,* 62 F.3d 465, 469 (2d Cir.1995)). Moreover, "[w]ith respect to the substance of the plausible alternative strategy, the defendant need not show that the defense would necessarily have been successful had it been used, only that 'it possessed sufficient substance to be a viable alternative.' " *Id.* at 116 (quoting *Winkler v. Keane,* 7 F.3d 304, 309 (2d Cir.1993)).

Other circuits have taken a slightly more demanding approach, requiring suggestion of a defense that was objectively reasonable. The Fourth Circuit requires defendants urging an ineffective assistance claim based on conflict of interest to (a)

"identify a plausible alternative defense strategy or tactic that [their] defense counsel might have pursued," (b) "show that the alternative strategy or tactic was objectively reasonable under the facts of the case," and (c) "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir.2001) (in banc), *aff'd without consideration of this point*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); *see Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004) (same); *Quince v. Crosby*, 360 F.3d 1259, 1264–65 (11th Cir.2004) (same).

## II.  Effect of Joint Representation

The District Court based its ruling on a conflict arising from Holtman's representation of both Robert and his father.[2] The State urges us to consider this a case of successive rather than concurrent representations, and therefore to apply the *Strickland* analysis without the *Sullivan* presumption of prejudice. In *Mickens*, the Supreme Court expressly declined to rule on whether *Sullivan*'s presumption of prejudice extended to successive, rather than concurrent, representations. *See Mickens*, 535 U.S. at 176, 122 S.Ct. 1237. Although Henry had already pled guilty before Robert's trial began, the record does not make clear when Holtman's representation of Henry actually concluded. We need not pursue this inquiry, however, because we conclude below that any possible conflict did not affect Robert's representation.

In order to demonstrate that a conflict adversely affected representation even under this Circuit's lenient standard, Robert must show that at least some plausible defense strategy was forgone as a consequence of Holtman's conflict of interest. We consider each of the three possibilities suggested by the District Court.

█ *1.  Henry would exonerate Robert.* The District Court suggested that one plausible trial strategy for Robert's defense would have been to call Henry as a witness at Robert's trial so that Henry would exonerate his son by testifying (either truthfully or falsely) that he had committed the acts of which Robert was accused. *See Eisemann*, 274 F.Supp.2d at 302–03. However, there is nothing in the record that provides the slightest indication as to what Henry would have said if called or even that he would have said anything at all. It is speculation to suggest that his testimony would have been exculpatory. *See Blau*, 159 F.3d at 75 ("No evidence in the record supports [the defendant's] suggestion that [the attorney's] failure to depose [the witness] or to even consider the possibility stemmed from a conflict of interest. Nothing supports [the defendant's] bald assertion that

---

**2.**  The District Court also suggested that Holtman was unable to represent Robert effectively because of a fear that his various frauds would be revealed, but declined to base his grant of relief on this ground. *See Eisemann*, 274 F.Supp.2d at 304–05. We are precluded from considering this aspect of the ineffective assistance claim because it was not exhausted in the state courts. Judge Weinstein indicated that if this Court were to see sufficient merit in this aspect of the claim to warrant a remand, he would permit a return to state court in order to exhaust. He added, however, that a return to state court "would be a waste of both federal and state court time," *id.* at 306, believing that, in any event, the conflict arising from joint representation adequately warranted relief. We also see no need for exhausting the claim based on fear of revelation of Holtman's misdeed, but for different reasons. First, as appears below, we conclude that the joint representation claim does not warrant relief. Second, the risk of having misdeeds disclosed could arise only if Holtman called Robert's father as a witness, a possibility that we conclude below was not plausible.

[the witness], at a deposition, 'would have' provided testimony tending to exonerate [the defendant].'").

Even without Henry's testimony, Robert's attorney was able to argue to the jury, based on Henry's plea to sodomizing the young girl, that it was Henry who had committed the crimes charged to Robert. The argument was based on the unlikelihood that a son would sodomize his father's victim. In any event, the absence of any evidence to show that Henry would have testified helpfully for Robert, whether truthfully or falsely, precludes any claim that calling Henry was a viable defense strategy.

Furthermore, there is no indication that Holtman failed to pursue this strategy because of his representation of Henry. The district court suggests that Holtman could not call Henry to the stand because that would risk revealing confidences Henry might have revealed to Holtman as his lawyer. *See Eisemann,* 274 F.Supp.2d at 303. It seems, however, that any such problem could have been avoided by a careful direct examination, and, if Henry was indeed willing to exonerate his son by testifying, as suggested by the District Court, then Henry might have allowed Holtman to refer to confidences he had shared.[3] Moreover, if questioned about his culpability for Robert's alleged offenses, Henry would have had the protection of the privilege against self-incrimination, and nothing in the record suggests that he was willing to waive his privilege. This circumstance, combined with the strategy's lack of viability, provides a likely reason why Robert's counsel did not call Henry to the stand at Robert's trial.

2. *Henry would disclaim his confession.* Equally unavailing is the possibility, suggested by the District Court, that Henry might have testified that his confession was coerced and that the little girl was lying about both men, thereby providing a basis for Robert to disclaim the truthfulness of his own confession. *See id.* at 303–04. This theory also rests on speculation as to how Henry would have testified, and fails for lack of any support in the evidence. The District Court's further suggestion that this strategy was not pursued because of Holtman's unwillingness to "betray" Henry—or hurt himself professionally—by contending that Henry's guilty plea was perjured, *see id.,* is also speculative.

3. *A plea bargain would be obtained.* The District Court suggested that Holtman's conflict of interest might have prevented Holtman from pursuing a plea bargain for Robert in exchange for testimony against his father. *See id.* at 304. However, the Supreme Court has indicated that the failure to obtain a plea bargain is not evidence of ineffective assistance of counsel when the record does not contain evidence that one might have been offered. *See Burger v. Kemp,* 483 U.S. 776, 785–86, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). In the pending case, as in *Burger,* "[t]he notion that the prosecutor would have been receptive to a plea bargain is completely unsupported in the record," *id.* at 785, 107 S.Ct. 3114, as the District Court acknowledged, *see Eisemann,* 274 F.Supp.2d at 304. This is not surprising since there is no indication that Robert had any evidence to offer against Henry or that the prosecutor had any reason to bargain with Robert for evidence against Henry, who readily

---

**3.** The District Court's second suggestion—that Holtman did not call Henry to the stand because he feared that Henry would likely refer to the fact that Holtman had defrauded the Eisemann family, *see Eisemann,* 274

F.Supp.2d at 303—is highly speculative and refers to a conflict arising from Holtman's own self-interest rather than his representation of Henry.

pled guilty. Although a defendant need not show that the negotiation of a plea bargain would have been successful, the strategy must nevertheless "possess[ ] sufficient substance to be a viable alternative." *Winkler v. Keane*, 7 F.3d 304, 309 (2d Cir.1993) ·(internal quotation marks omitted). Pursuit of a plea bargain for Robert was not remotely a plausible defense strategy.

Thus, there is nothing in the record to suggest that Holtman's conflict caused him to forgo a plausible defense theory. Moreover, we note that the conduct of Robert's defense was entirely competent. Judge Weinstein noted that "the actual person who handled [Robert's defense at trial] seemed like a competent young man." The state trial judge commented, "I think and I believe it was tried very well, and certainly the defendant Eiseman[n] was very effectively represented by counsel throughout the trial.".

III. AEDPA Deference

Our conclusion that Holtman's conflict did not result in the abandonment of a defense strategy that can be considered plausible, even under this Circuit's lenient approach, is reinforced by the deferential standard that AEDPA obliges us to apply in considering challenges to state court convictions. A petition for habeas corpus cannot be granted unless the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254.

■ On Robert's second appeal, the Appellate Division rejected the ineffective assistance claim in these words:

There is no merit to the defendant's contention that the defense counsel was ineffective due to a conflict of interest (*see, People v. Recupero*, 73 N.Y.2d 877,

538 N.Y.S.2d 234, 535 N.E.2d 287; *People v. Alicea*, 61 N.Y.2d 23, 471 N.Y.S.2d 68, 459 N.E.2d 177). The defense counsel's associate [Holtman] previously represented the defendant's father, who pleaded guilty to sexually assaulting the same victim. However, there is no indication that the defense counsel divulged or used any of the prior client's confidences or secrets. The defense counsel merely used the father's plea of guilty to support the defense theory that the father also perpetrated the crimes charged against the defendant. Hindsight does not elevate unsuccessful trial tactics into ineffective assistance of counsel (*see, People v. Baldi*, 54 N.Y.2d 137, 444 N.Y.S.2d 893, 429 N.E.2d 400).

*People v. Eisemann*, 248 A.D.2d 484, 484, 670 N.Y.S.2d 39, 40–41 (2d Dep't 1998). The state standard referred to by the Appellate Division appears to be similar to the federal standard for evaluating a defendant's claim of ineffective assistance of counsel due to a conflict ⸱of interest. *See Recupero*, 73 N.Y.2d at 880, 538 N.Y.S.2d at 237, 535 N.E.2d at 290 (Titone, J., dissenting) (noting that the case "[took] a giant step toward aligning [New York] State's rule with the more exacting Federal standard)." Thus, the Appellate Division's decision was not clearly "contrary" to Supreme Court law.

■ Even if we thought that Holtman's conflict precluded defense strategies that could be considered "plausible," we could not say that the Appellate Division made an unreasonable application of Supreme Court precedent. In the absence of a definitive ruling by the Supreme Court as to whether ineffective assistance claims based on a conflict of interest are to be assessed under the "plausible" strategy standard of this Circuit or the "objectively reasonable" standard of other Circuits, it was not unreasonable for the state court to assess and reject Robert's claim under

what appears to have been the slightly more rigorous standard.

## Conclusion

The judgment of the District Court granting habeas corpus relief is reversed, and the case is remanded with directions to dismiss the petition.